# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

JANE DOE,

       *Plaintiff,*

v.                                                            Civil Action No. 3:18-cv-00041

PAMELA SUTTON-WALLACE,
DR. SCOTT A. SYVERUD,
DR. KATHLEEN ROOT,
ADAM CARTER,
CALLIE BATEMAN,
JANE ROE 1-3 and
JOHN DOE 1-5,

       *Defendants.*

## DEFENDANT DR. SCOTT A. SYVERUD'S BRIEF IN SUPPORT OF FRCP 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, Dr. Scott A. Syverud (Dr. Syverud), by counsel, submits this Brief in Support of FRCP 12(c) Motion for Judgment on the Pleadings. Plaintiff's claims pursuant to 42 U.S.C. §1983 fail as a matter of law because Dr. Syverud is entitled to qualified immunity, and because Plaintiff has failed to plead sufficient facts to state a claim that Dr. Syverud acted under color of state law. Plaintiff's state law claims fail because the actions attributed to Dr. Syverud in the Complaint were legally justified or excused. And Ms. Doe's federal and state claims also fail because they arise in the context of her commission of a felony—attempted suicide. For the reasons set forth below, Dr. Syverud respectfully requests that the Court grant his Motion, enter judgment in his favor and dismiss Ms. Doe's Complaint against him, and grant such other relief as the Court deems appropriate.

## Statement of Facts

The Complaint sets forth various due process violations and other constitutional claims, as well as Virginia state tort law claims of gross negligence, assault and battery, and false imprisonment.[1] The claims arise from medical care provided to Plaintiff (Ms. Doe) on January 11, 2018 in the emergency department at the University of Virginia (UVA) Medical Center.[2]

Relevant to the issues raised by Dr. Syverud's Motion, Ms. Doe alleges the following:

- Ms. Doe attempted suicide on January 11, 2018 by running a hose from the exhaust pipe into the passenger compartment of her car.[3]

- Pursuant to a paperless Emergency Custody Order[4], a law enforcement offer delivered Ms. Doe to the Emergency Department.[5]

- At all relevant times, Ms. Doe was competent to make decisions concerning her treatment.[6]

- Ms. Doe was an unwilling patient.[7]

- Dr. Syverud, acting under color of state law, was Ms. Doe's attending physician in the emergency department.[8]

- Ms. Doe objected to having her blood drawn and to providing a urine sample.[9]

- Upon Ms. Doe's information and belief, Dr. Syverud ordered the administration of medications, including, zyprex [sic] a psychoactive drug; Benadryl; and Ativan, a sedative also used to combat anxiety.[10]

---

[1] Complaint, CM/ECF Doc. 1, ¶¶ 23-37.
[2] *Id.* at ¶10, *et seq.*
[3] *Id.* at ¶9.
[4] Va. Code § 37.2-808(G) grants authority to a law enforcement officer, who upon probable cause believes that a person meets the criteria for emergency custody as stated in this section, to take that person into custody without prior authorization, and transport that person to an appropriate location to assess the need for hospitalization or treatment.
[5] Complaint, CM/ECF Doc. 1, ¶¶10-11.
[6] *Id.* at ¶20.
[7] *Id.* at ¶22.
[8] *Id.* at ¶3.
[9] *Id.* at ¶11.
[10] *Id.* at ¶12.

2

- Ms. Doe's arm was held against her wishes, and blood extracted from her arm.[11]

- Upon Ms. Doe's information and belief, Dr. Syverud later ordered the administration of Ketamine, a psychoactive drug that induces a trance-like state while providing sedation, and memory loss.[12]

- Ms. Doe was not advised of the drugs administered to her, and she was not told of the likely effects and potential side effects.[13]

- On Dr. Syverud's order or that of Dr. Root, Ms. Doe was placed in physical restraints for the sole purpose of extracting urine.[14]

- At the request of co-Defendant Adam Carter, RN, Dr. Syverud or Dr. Root entered an order to catheterize Ms. Doe to obtain urine.[15]

Ms. Doe's Complaint sets forth four "causes of action." The First Cause of Action asserts violation of due process, alleging that she has a protected liberty interest in refusing unwanted medical treatment. She claims that the conduct of Dr. Syverud and the co-Defendants violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution.[16]

In her Second Cause of Action, Ms. Doe asserts that she has a protected liberty interest in knowing what drugs she was administered, and to give informed consent. She claims Dr. Syverud, and some co-Defendants, violated her right to know what substances were injected into her body, and to give informed consent for those drugs. She claims that the actions of Dr. Syverud, and some co-Defendants in this respect, were in violation of the Fourteenth Amendment to the United States Constitution.[17]

---

[11] *Id.* at ¶13.
[12] *Id.* at ¶14.
[13] *Id.* at ¶15.
[14] *Id.* at ¶16.
[15] *Id.* at ¶18.
[16] *Id.* at ¶¶23-26.
[17] *Id.* at ¶27-30.

3

In her Third Cause of Action, Ms. Doe asserts that the Fourth and Fourteenth Amendments to the United States Constitution confer a right to be free from restraints. Ms. Doe contends that she has the right to be free of medical and physical restraints within the context of the allegations she has pled in her Complaint.[18]

In her Fourth Cause of Action, Ms. Doe asserts three Virginia state law claims, alleging that the aforesaid conduct by Dr. Syverud, and the co-Defendants, constitutes gross negligence, assault and battery, and false imprisonment.[19]

## Statement of the Issues

I. **Neither the U.S. Supreme Court nor the Fourth Circuit have addressed qualified immunity for an emergency room physician providing medical care and treatment to a suicidal and unwilling patient in Virginia who was in the custody of law enforcement pursuant to an ECO. Virginia law authorizes such care. *See* Va. Code §37.2-808. Is Dr. Syverud entitled to qualified immunity where a Virginia statute authorizes the care he provided, and where there is no binding federal precedent that renders unconstitutional such medical care and treatment?**

II. **Ms. Doe's formulaic recitation and conclusory allegation that Dr. Syverud acted under color of state law is insufficient. Should her constitutional claims be dismissed?**

III. **State Law Claims:**

    A. **Gross negligence requires a plaintiff to prove "a complete neglect of the safety of another person." *See*, *e.g.*, *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487, 603 S.E.2d 916, 918 (2004). Ms. Doe's Complaint includes no facts or allegations that her safety was neglected. Can Ms. Doe proceed with her gross negligence claim?**

---

[18] *Id.* at ¶¶31-34.
[19] *Id.* at ¶¶35-37.

4

B. **Assault and battery does not occur where there is legal justification for the defendant's conduct.** *See, e.g.*, *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003). Virginia Code § 37.2-808 provides legal justification for the care and treatment that Dr. Syverud provided to Ms. Doe. Can Ms. Doe proceed with her assault and battery claims where Dr. Syverud's conduct is legally justified?

C. **Legal excuse overcomes a false imprisonment claim.** *See, e.g.*, *Lewis v. Kei*, 281 Va. 715, 724, 708 S.E.2d 884, 890 (2011). Virginia Code § 37.2-808 provides legal excuse for the care and treatment that Dr. Syverud provided to Ms. Doe. Can Ms. Doe proceed with her false imprisonment claim where Dr. Syverud's conduct is legally excused?

IV. **Suicide bars Ms. Doe's constitutional claims and her state law claims.**

A. **Should 42 U.S.C. § 1983 be interpreted to permit a plaintiff to assert constitutional claims that arise from her attempt to commit a felony, particularly where federal law requires the care that Dr. Syverud provided?**

B. **Suicide is a common law crime in Virginia.** *Wackwitz v. Roy,* 244 Va. 60, 418 S.E.2d 861, 864 (Va. 1992). An attempt to commit a crime is also a crime. *See* Va. Code §18.2-26 and §18.2-27. And any cause of action arising from an illegal act is barred in Virginia. *See Brown v. Harris*, 240 F. 3d 383, 386 (4th Cir. 2001) (cause of action arising from suicide is barred). Are Ms. Doe's state law claims barred because they arise from the illegal act of attempting suicide?

### Standard of Review

"The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)."[20]

"Therefore, a motion for judgment on the pleadings 'should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove

---

[20] *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014), citing *Butler v. United States,* 702 F.3d 749, 751-52 (4th Cir. 2012).

5

any set of facts in support of his claim entitling him to relief.'"[21]  "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact."[22]

Surviving a Rule 12(b)(6) motion requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."[23]  A proper complaint needs "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[24] Although courts must view the facts in the light most favorable to the plaintiff, courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."[25]  Given that a court is "not bound to accept as true a legal conclusion couched as a factual allegation," it must first identify and disregard averments that "are no more than conclusions [that] are not entitled to the assumption of truth."[26]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27]

### Argument

I.    **Dr. Syverud is entitled to qualified immunity as to each of Ms. Doe's constitutional claims in the first three causes of action alleged in her Complaint.**

Dr. Syverud's actions in providing care to Ms. Doe—a suicidal patient subject to an emergency custody order who was competent but unwilling to consent to medical evaluation and treatment—were objectively reasonable in light of the Virginia statute that controls such circumstances.

---

[21] *Id., citing Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).
[22] *Id., citing Butler* at 752.
[23] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[24] *Id.*
[25] *Eastern Shore Mkts. Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).
[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).
[27] *Id.* at 678.

### A. The legal framework for the defense of qualified immunity.

The Fourth Circuit has set forth the parameters of qualified immunity. "Generally, qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions."[28] "The protection extends to 'all but the plainly incompetent or those who knowingly violate the law.'"[29] "Indeed, as we have emphasized repeatedly, '[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'"[30]

The Fourth Circuit has also held that the defense of qualified immunity is a question of law for the trial court. "The defense of qualified immunity is broader than a mere defense to liability. Rather, intended to 'spare individual officials the burdens and uncertainties of standing trial,' it provides for immunity from suit where a state actor's conduct is objectively reasonable under the circumstances."[31] "We therefore prefer questions of qualified immunity to be decided 'at the earliest possible stage in litigation.'"[32] "And we have recognized that, on a defense of qualified immunity, once a state actor's conduct is established beyond dispute, the question of whether that conduct was reasonable is one of law for the court to decide."[33]

---

[28] *Raub v. Campbell,* 785 F.3d 876, 880-81 (4th Cir. 2015) citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).

[29] *Id.* at 881 citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[30] *Id.* citing *S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 266 (4th Cir. 1998) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

[31] *Id.* citing *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 965 (4th Cir. 1992) (*en banc*); s*ee also Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985) (plurality opinion) (noting that qualified immunity is "effectively lost if a case is erroneously permitted to go to trial").

[32] *Id.* citing *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

[33] *Id.* citing *Cloaninger* at 333.

**B.** **Neither the U.S. Supreme Court nor the Fourth Circuit have considered medical care given to an unwilling suicidal patient under an ECO in Virginia. But Dr. Syverud acted reasonably, and Virginia law as well as precedent of the U.S. Supreme Court and Fourth Circuit supports a finding of qualified immunity here.**

To overcome a qualified immunity defense to her constitutional claims, Ms. Doe would have to demonstrate that Dr. Syverud's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known."[34] But neither the U.S. Supreme Court nor the Fourth Circuit has previously addressed a case such as this where an unwilling, suicidal patient presented for evaluation and treatment to an emergency department while in the custody of law enforcement pursuant to an ECO. And absent clearly established law establishing Dr. Syverud's conduct as unlawful, he is entitled to qualified immunity. "'Ordinarily for the law to be clearly established, there must be a Supreme Court or [Fourth Circuit] decision on point…'"[35] "As the Supreme Court recognized in *Ashcroft v. al-Kidd*, although '[w]e do not require a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate.'"[36]

The Fourth Circuit has addressed the issue of qualified immunity in a number of cases involving involuntary psychiatric evaluations. But the cases do not involve the care and treatment offered by an emergency room physician to an unwilling, suicidal patient in custody pursuant to an ECO. In one such case, the court set forth the structure of the legal analysis for the defense: "[o]ur qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has

---

[34] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975).
[35] *Raub v. Campbell*, 3 F. Supp. 3d 526, 535 (EDVA 2014) citing *Oliver v. Woods*, 209 F.3d. 1179, 1185 (10th Cir. 2000) (citations omitted); *See Wilson v. Layne*, 141 F.3d 111, 117 (4th Cir. 1998).
[36] 563 U.S. 731, 741 (2011) citing *Malley* at 341.

8

established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation."[37] "However, we need not reach both prongs of the analysis.[38] "Rather, we may address these two questions in 'the order . . . that will best facilitate the fair and efficient disposition of each case.'"[39]

In *Raub*, the district court granted summary judgment to a defendant mental health evaluator on the basis of qualified immunity, concluding that the mental health evaluator acted reasonably in recommending the plaintiff's seizure and further detention.[40] The Fourth Circuit chose to focus not on the constitutionality of the defendant's actions in seizing the plaintiff for mental health evaluation and detention (inquiry 1), but rather, the fact that the defendant's conduct was not, "clearly proscribed by law."[41] The Fourth Circuit noted that, "[i]n this [second] prong of the qualified immunity analysis, the 'inquiry turns on the objective legal reasonableness of [[the defendant's]] action, assessed in light of the legal rules that were clearly established at the time it was taken.'"[42] "As a result, we look not to whether the right allegedly violated was established 'as a broad general proposition' but whether 'it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.'"[43]

---

[37] *Raub v. Campbell,* 785 F.3d at 881 citing *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).
[38] *Id.* citing *Pearson*, 555 U.S. at 242.
[39] *Id.*
[40] *Id.* at 878.
[41] *See id. at 881.*
[42] *Id.* at 881-882 citing *Pearson*, 555 U.S. at 244.
[43] *Id.* at 882 citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), as modified by *Pearson*, 555 U.S. 223; s*ee also S.P.*, 134 F.3d at 266 (4th Cir. 1998) ("[T]he established contours of probable cause [must have been] sufficiently clear at the time of the seizure such that the unlawfulness of the officers' actions would have been apparent to reasonable officers.").

9

Importantly, the Fourth Circuit acknowledged, "a distinct 'lack of clarity in the law governing seizures for psychological evaluations,' …"[44] Despite Dr. Syverud's belief that the law allowed—even mandated—the evaluation and treatment he provided, at best Ms. Doe's claims exist within this context of an absence of clarity. The *Raub* court also reiterated the long-held rule that questions of constitutionality should not be decided unless unavoidable when considering the qualified immunity defense.[45] And this is particularly true where, as here, the unlawfulness of a defendant's conduct is not clearly established at the time of the incident at issue.[46] Dr. Syverud is entitled to qualified immunity.

In *Gooden*, the Fourth Circuit evaluated a 42 U.S.C. § 1983 claim involving a mental health detention—this time arising in Maryland. The court noted that "[i]n cases where officers are hurriedly called to the scene of a disturbance, the reasonableness of their response must be gauged against the reasonableness of their perceptions, not against what may later be found to have actually taken place."[47] The court went on to note that "[t]he officers' actions, furthermore, were pursuant to state procedure which authorized them to petition for emergency evaluation of an individual when they had "reason to believe that the individual has a mental disorder and that there is clear and imminent danger of the individual's doing bodily harm to the individual or another."[48] "Under these circumstances, the officers can hardly be faulted for taking action against what they

---

[44] *Id.*, citing *Gooden v. Howard Cnty. Md.*, 954 F.2d at 968 (4th Cir. 1992); *See also S.P.*, 134 F.3d at 266.

[45] *Raub* at 884 citing *Pearson,* 555 U.S. at 241 (cautioning against deciding "questions of constitutionality . . . unless adjudication is unavoidable), and *Buchanan v. Maine*, 469 F.3d 158, 168 (1st Cir. 2006) (stating that avoiding the Fourth Amendment question in qualified immunity analysis is appropriate where "the inquiry involves a reasonableness question which is highly idiosyncratic and heavily dependent on the facts").

[46] *See id.*

[47] *Gooden* 954 F.2d at 965 (4th Cir. 1992).

[48] *Id.* at 966 citing Md. Health-General Code Ann. § 10-622(a) (1990).

10

reasonably perceived to be a genuine danger to the residents of the Columbia apartment complex or to Ms. Gooden herself."[49]  Likewise here, Dr. Syverud should not be faulted for what he reasonably perceived to be a genuine and emergent danger to Ms. Doe.  After all, Ms. Doe alleges that she was an unwilling suicidal patient known to have intentionally ingested carbon monoxide. As an unwilling patient, it could not be known whether she ingested other toxic substances that she chose not to disclose to increase the likelihood of success in her efforts to kill herself.

Qualified immunity was also considered under a similar fact pattern in *Abbas v. Woleben*.[50] There, the district court granted a Rule 12(b)(6) motion to dismiss plaintiff's 42 U.S.C. § 1983 action, which included a claim of unwarranted seizure under the Fourth Amendment.[51]  The district court acknowledged that "… the Second Circuit has held that confinement of a patient with mental health issues 'was not unconstitutional . . . because the hospital staff had reasonable grounds to believe that she was a danger to herself or to others.'"[52]  A suicidal patient who has ingested carbon monoxide, like Ms. Doe, who refused medical examination and treatment upon presentation to an emergency department, is unequivocally a danger to herself and possibly others.

### C. Applying the necessary legal analysis to this case supports a finding of qualified immunity as to Dr. Syverud.

This court's evaluation of the instant case should follow the procedural guidance of *Raub*, *Gooden*, and *Abbas*.  Whereas two of these cases evaluate the defense of qualified immunity asserted by law enforcement officers in the context of involuntary psychological evaluations, and one case involves a *voluntary* patient in an emergency department, neither the Supreme Court nor the Fourth Circuit has considered the care and treatment provided by an emergency room

---

[49] *Id.*
[50] 2013 U.S. Dist. LEXIS 134446 (EDVA September 19, 2013).
[51] *Abbas* at *25.
[52] *Id.* at *26 citing *Anthony v. City of N.Y.*, 339 F.3d 129, 142 (2d Cir. 2003).

11

physician, like Dr. Syverud, to an unwilling patient brought to the hospital for both medical care and psychiatric evaluation by a law enforcement officer pursuant to an ECO. Nonetheless, Virginia's statutory scheme for involuntary psychological evaluations and corresponding medical evaluation and treatment supports the conclusion that Dr. Syverud fully complied with Virginia law. He is, therefore, entitled to qualified immunity.

Ms. Doe's Complaint describes a "paperless custody order", and it thereafter refers to "the Emergency Custody Order" in the following paragraph.[53] Such orders are contemplated by only one Virginia statute—Va. Code Ann. § 37.2-808. Emergency custody; issuance and execution of order. Specifically, subsection (G) allows, "[a] law-enforcement officer who, based upon his observations or the reliable reports of others, has probable cause to believe that a person meets the criteria for emergency custody as stated in this section may take that person into custody and transport that person to an appropriate location to assess the need for hospitalization or treatment without prior authorization."[54] Subsection (G) goes on to provide that "[s]uch evaluation shall be conducted *immediately*."[55] And subsection B provides that the patient can be taken to "a convenient location" for the mental evaluation.[56] The law enforcement officer in this case transported Ms. Doe to the Emergency Department at UVA Medical Center, a medical facility. Given that the statute does not require transportation to an emergency department, given that other location options for mental evaluation exist, and given that the severity of Ms. Doe's medical condition could not be known without medical evaluation following her suicide attempt, the only logical inference is that the law enforcement officer transported Ms. Doe to UVA Medical Center

---

[53] Complaint, CM/ECF Doc. 1, ¶¶ 10-11.
[54] Va. Code Ann. § 37.2-808.
[55] *Id.* (emphasis added).
[56] *Id.*

for both mental evaluation, and for emergent medical evaluation. Virginia Code § 37.2-808 contemplates both mental and medical evaluation.

### 1. Virginia Code 37.2-808 applies to this case; Virginia Code § 37.2-1104 is irrelevant.

Va. Code § 37.2-808 provides the authority for the ECO that led Ms. Doe to the emergency department at UVA Medical Center. Subsection L of Va. Code § 37.2-808 references an "order for temporary detention for testing, observation, or treatment pursuant to § 37.2-1104. But the referenced statute does not apply to Ms. Doe's claims. Chapter 11 of Subtitle IV of Title 37.2 of the Virginia Code is entitled *Judicial Authorization of Treatment.* Section 37.2-1104 specifies, in part:

> A. Upon the advice of a licensed physician who has attempted to obtain consent *and upon a finding of probable cause to believe that an adult person within the court's jurisdiction is incapable of making an informed decision regarding treatment of a physical or mental condition* or is incapable of communicating such a decision due to a physical or mental condition and that the medical standard of care calls for testing, observation, or treatment within the next 24 hours to prevent death or disability, or to treat an emergency medical condition that requires immediate action to avoid harm, injury, or death, the court or, if the court is unavailable, a magistrate serving the jurisdiction may issue an order authorizing temporary detention of the person by a hospital emergency room or other appropriate facility and authorizing such testing, observation, or treatment. The detention may not be for a period exceeding 24 hours, unless extended by the court as part of an order authorizing treatment under § 37.2-1101…

> B. A court or, if the court is unavailable, a magistrate serving the jurisdiction may issue an order authorizing temporary detention for testing, observation, or treatment for a person who is also the subject of an emergency custody order issued pursuant to § 37.2-808, *if such person meets the criteria set forth in subsection A…*[57]

The clear predicate to such a treatment order under Va. Code § 37.2-1104 is a finding of incapacity—something that does not exist in this case, assuming *arguendo,* but not conceding, the

---

[57] Va. Code Section 37.2-1104 (emphasis added).

allegations in the Complaint. Ms. Doe pleads that she was competent to make decisions concerning her treatment at all relevant times.[58] Dr. Syverud, therefore, could not properly request a temporary detention order for medical treatment. And a magistrate could not properly execute such an order. Given the irrelevance and inapplicability of Va. Code § 37.2-1104 to the instant facts, this Court is left to interpret the very statute authorizing the ECO that brought Ms. Doe to the Emergency Department at UVA Medical Center—Va. Code 37.2-808. This statute creates the framework within which an Emergency Medicine physician, like Dr. Syverud, must evaluate and treat patients brought to the emergency department at UVA Medical Center. And this statue authorizes the evaluation and treatment that Dr. Syverud provided.

## 2. Virginia Code § 37.2-808 authorizes the care and treatment that Dr. Syverud provided.

Pursuant to Virginia Code § 37.2-808, Dr. Syverud had the statutory authority to take the actions he did to evaluate and treat Ms. Doe. Even in the light most favorable to the Plaintiff, the facts as pled are undisputable—Ms. Doe had been taken into custody and transported to the Emergency Department at UVA Medical Center by a law-enforcement officer who had determined that she:

> (i) *ha[d] a mental illness* and that there exist[ed] a substantial likelihood that, as a result of the mental illness, the person w[ould], in the near future:
>
>> (a) *cause serious physical harm to h[er]self or others as evidenced by recent behavior* causing, attempting, or threatening harm and other relevant information, if any, <u>or</u>
>>
>> (b) suffer serious harm due to h[er] lack of capacity to protect [her]self from harm or to provide for h[er] basic human needs;
>
> (ii) *[wa]s in need of hospitalization for treatment*, <u>and</u>

---

[58] Complaint, CM/ECF Doc. 1, ¶20

*(iii)[wa]s unwilling to volunteer* or is incapable of volunteering *for hospitalization or treatment.*[59]

The statute also provides—and Dr. Syverud could properly presume—that "[n]othing herein shall preclude a law-enforcement officer … from obtaining *emergency medical treatment or further medical evaluation* at any time for a person in his custody as provided in this section."[60] And this is exactly what Dr. Syverud proceeded to do when a law enforcement officer transported Ms. Doe to the Emergency Department of the UVA Medical Center rather than to some other, "*convenient location* to be evaluated to determine whether the person meets the criteria for temporary detention pursuant to § 37.2-809 and to assess the need for hospitalization and treatment."[61]

> ### 3. Va. Code § 37.2-808 distinguishes evaluation and treatment of mental illness from evaluation and treatment of medical illness. And it authorizes both.

The drafters of the statute took care to separate and distinguish terms relating to *mental* illness from those relating to *medical* illness. Among them are: 1) "hospitalization and treatment"; 2) "emergency *medical* treatment"; and 3) "further *medical* evaluation." The first of these terms is used throughout Title 32 to identify and define the process by which a patient's mental health is assessed to determine whether an ECO, a TDO, or even commitment, are appropriate to further evaluate or treat a patient for a *mental* illness.[62] "Hospitalization and treatment" as the term is used in Va. Code § 37.2-808, refers to hospitalization and treatment in a state hospital and a

---

[59] *See* Va. Code § 37.2-808 (A) (emphasis added).

[60] Va. Code § 37.2-808 (I) (emphasis added).

[61] *See* Va. Code 37.2-808 (B). This subsection goes on to provide that "the evaluation shall be made by a person designated by the community services board who is skilled in the diagnosis and treatment of mental illness …".

[62] *See*, *e.g.*, 37.2-808 (B) (emphasis added). *See also* Va. Code § 37.2-100. (Title 37.2 of the Virginia Code—Behavioral Health and Developmental Services—defines "hospital" as "… a state hospital and a licensed hospital that provides care and treatment for persons with *mental* illness.").

15

licensed hospital that provides care and treatment for persons with mental illness. This provision authorizes the initial process by which many patients are ultimately admitted to "hospitals" for mental health evaluation and treatment. The emergency department at UVA Medical Center is not such a "hospital."

In subsection (C), Va. Code § 37.2-808 further demonstrates that *medical* care is contemplated and justified by the statute by articulating as follows:

> … Transportation under this section shall include transportation to a *medical facility* as may be necessary to obtain *emergency medical evaluation or treatment that shall be conducted immediately* in accordance with state and federal law.[63]

The clear intent of the statute is to authorize law enforcement officers and health care providers to consider the reality that *mental* illness (or emergency) can coexist with a *medical* illness (including an emergency), the latter of which could be of equal or greater proximate danger to an individual subject to an ECO. And the statute authorizes law enforcement officers and health care providers to act accordingly. Applying the statute here, Dr. Syverud was justified to take all reasonable steps necessary to provide the emergent medical evaluation and care that Ms. Doe, an unwilling suicidal patient, needed.[64] Employing both medical and physical restraints to accomplish the evaluation that Dr. Syverud believed was necessary in his professional judgment is undoubtedly reasonable, particularly given that Va. Code § 37.2-808 applies to unwilling patients, such as Ms. Doe.

The Virginia General Assembly has also distinguished "hospitalization and treatment" by intentionally choosing different terminology within Va. Code §37.2-808—"emergency *medical* treatment" and "further *medical* evaluation" to describe necessary *medical*, as opposed to, *mental*

---

[63] Va. Code § 37.2-808 (C).

[64] Moreover, Va. Code § 37.2-808 (C) articulates that even outside of the context of medical emergencies, a physician at a state hospital and a licensed hospital that provides care and treatment for persons with *mental* illness can, under the statute, require a *medical* evaluation prior to admission for mental health evaluation and treatment.

16

health care. These two statutory terms must carry a different meaning from "hospitalization and treatment," and the plain meaning of both terms, along with their context in the statute, provide guidance for the very situation that Dr. Syverud found himself in. A situation in which Ms. Doe also required emergent *medical* evaluation and treatment due to her attempted suicide by poisoning.[65] What Dr. Syverud could not know is whether Ms. Doe had attempted suicide by employing additional means. After all, she was an unwilling patient.

> **4. The canons of statutory interpretation support the conclusion that Dr. Syverud's care and treatment of Ms. Doe were appropriate while she remained under an ECO pursuant to Va. Code § 37.2-808.**

In *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, the Virginia Supreme Court articulated the canons of statutory interpretation, including distinctions between statutory terms:

> When construing a statute, our primary objective is "'to ascertain and give effect to legislative intent,'" as expressed by the language used in the statute. "'When the language of a statute is unambiguous, we are bound by the plain meaning of that language.'" And if the language of the statute "'is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.'"

> In evaluating a statute, moreover, we have said that "consideration of the entire statute . . . to place its terms in context to ascertain their plain meaning does not offend the rule because 'it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" ...[66]

This edict is clear, and as applied to Va. Code § 37.2-808, it helps to distill the pertinent distinctions between the various terms chosen by the Virginia General Assembly in this statute. Where Ms. Doe was transported by a law enforcement officer to the Emergency Department of UVA Medical

---

[65] *See* Complaint, CM/ECF Doc. 1, ¶ 9.
[66] 283 Va. 420, 425; 722 S.E.2d 626, 629 (2012) (citations omitted).

17

Center, and where she remained in custody pursuant to an ECO, Dr. Syverud could properly provide *emergency medical evaluation or treatment that shall be conducted immediately.*[67]

Equally important, this Court must interpret Va. Code § 37.2-808 "as a consistent and harmonious whole so as to effect the legislative goal."[68] Whereas the statute incorporates by reference Va. Code § 37.2-1104 to provide for the necessary *medical* treatment of *incapacitated* persons, there is no such incorporation by reference for competent, but unwilling patients like Ms. Doe. It would be wholly illogical to conclude that the Virginia General Assembly failed to consider this category of patients that includes Ms. Doe, particularly when the statute expressly applies to competent persons "unwilling to volunteer...", *i.e.*, those unwilling to consent to immediate medical evaluation or treatment as authorized—even required—by the statute.[69] Moreover, the statute permits a law enforcement officer to infringe upon the liberty interests of a competent, but unwilling person, by detaining and taking custody for the purpose of a medical evaluation. Interpreting the statute to exclude the medical evaluation of the type provided by Dr. Syverud would render meaningless the provisions set forth in subsection (I).

Subsection (I) of the statute also speaks directly to the issues in this case, providing that "a law-enforcement officer … [can] obtain emergency medical treatment or further medical evaluation at any time for a person in his custody as provided in this section."[70] A law enforcement officer did, in fact, transport Ms. Doe to the UVA Medical Center Emergency Department, where Dr. Syverud provided emergency medical treatment or further medical evaluation. Of note, Ms. Doe does not allege—nor could she—that the law enforcement officer who held her in custody

---

[67] *See* Va. Code § 37.2-808 (C).
[68] *See* Cuccinelli, 283 Va. at 425, 722 S.E.2d at 629.
[69] *See* Va. Code § 37.2-808 (A) and (L).
[70] Va. Code § 37.2-808 (I).

pursuant to the ECO objected to the emergency medical treatment or further medical evaluation that Dr. Syverud provided.

### D. Dr. Syverud acted reasonably, and he is entitled to qualified immunity.

Dr. Syverud found himself in a difficult situation when Ms. Doe presented as a suicidal patient who was unwilling to submit to medical evaluation and treatment. The ECO statute, §37.2-808, authorized her detention by law enforcement, who brought her to the UVA Medical Center ED. The statute contains no provision that would permit Dr. Syverud to apply for—or for a magistrate to issue—a detention order for medical treatment. This is the case, taking as true but not admitting the allegation of competence in Ms. Doe's Complaint.[71] Dr. Syverud's actions were objectively reasonable and authorized by Va. Code § 37.2-808. And as discussed, *infra*, his actions were also required by federal law.

The Supreme Court of the United States has explained that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[72] And in the context of a law enforcement officer, the court also held that "[t]o determine whether a given officer falls into either of those two categories, a court must ask whether it would have been clear to a reasonable officer that the alleged conduct "was unlawful in the situation he confronted."[73] "If so, then the defendant officer must have been either incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity."[74] "If not, however—*i.e.,* if a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from

---

[71] Complaint, CM/ECF Doc. 1, ¶20.
[72] *Ziglar v. Abbasi*, 582 U.S. ___, ___, 137 S.Ct. 1843, 1867 (2017) citing *Malley*, 475. U. S. at 341 (1986).
[73] *Id.* citing *Saucier*, 533 U.S. 194, 202 (2001).
[74] *Id.*

19

liability."[75]  The same analysis should hold true where, as here, the defendant alleged to have acted under color of state law is an emergency room physician who—pursuant to state law—was charged with evaluating and treating an unwilling, suicidal patient in the custody of law enforcement pursuant to an ECO.

The provisions contained in the ECO statute, Va. Code § 37.2-808, alone, demonstrate that evaluation and treatment of an unwilling suicidal patient under an ECO has not been clearly established to be a constitutional violation.  To the contrary, the statute explicitly authorizes the medical evaluation and treatment that Ms. Doe received.  And to the extent that this Court interprets the statute differently, Dr. Syverud need only demonstrate that a reasonable emergency room physician might not have known for certain that his conduct was unlawful.

Va. Code § 37.2-808 erodes any semblance of certainty with respect to the notion that the evaluation and treatment that Dr. Syverud provided to Ms. Doe was unlawful.  Dr. Syverud is entitled to qualified immunity with respect to the constitutional claims asserted in Ms. Doe's Complaint.[76]

II.     **Ms. Doe's Complaint provides nothing more than a formulaic recitation of a predicate element of her 42 U.S.C. § 1983 claim—that Dr. Syverud acted under color of state law.  Her constitutional claims should be dismissed.**

In her Complaint, Ms. Doe makes the conclusory allegation of law that Dr. Syverud is a physician employed at the University of Virginia Medical Center who was acting under color of

---

[75] *Id.  See also Taylor v. Barkes*, 135 S. Ct. 2042, 2045 (holding that a corrections department commissioner was entitled to qualified immunity: "In short, even if the institution's suicide screening and prevention measures contained the shortcomings that respondents allege, no precedent on the books in November 2004 would have made clear to petitioners that they were overseeing a system that violated the Constitution. Because, at the very least, petitioners were not contravening clearly established law, they are entitled to qualified immunity. The judgment of the Third Circuit is reversed.").

[76] *See* Complaint, CM/ECF Doc. 1, Causes of Action ¶¶ 23-34.

20

state law.[77]  Her claim is unsupported by any facts, and is merely a formulaic recitation of an element of her 42 U.S.C. § 1983 claim.[78]   But such formulaic recitation of the elements is insufficient to defeat a Rule 12(b)(6) motion.[79]  Here, Ms. Doe pleads no facts in support of her claim that Dr. Syverud acted under color of state law.  Her 42 U.S.C. § 1983 claims should be dismissed with prejudice.

### III.   Ms. Doe's state law claims fail to state a claim upon which relief can be granted.

Ms. Doe's state law claims should also fail.  She cannot overcome her mere legal conclusion that Dr. Syverud's conduct constitutes gross negligence.[80]  And her battery and false imprisonment claims are precluded by Va. Code § 37.2-808.[81]

### A.   This Court may exercise pendent jurisdiction over Ms. Doe's state law claims and must apply state law in doing so.

"'[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]' 28 U.S.C. § 1367(a). Claims are considered part of the same case or controversy when they are

---

[77] *Id.* at ¶ 3.

[78] *See Connor v. Donnelly*, 42 F.3d 220, 223 (1994) citing *West v. Atkins*, 487 U.S. 42, 48 (1988) (noting that to prevail under 42 U.S.C. § 1983, "plaintiff must show…that the defendant acted under color of state law.").

[79] *See Iqbal*, at 678; *See also Priority Auto Group, Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (2014) (noting that "[t]he  standard for Rule 12(c) motions is the same as applied to Rule 12(b)(6) motions, which should only be granted if, 'accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)); *See also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 55 (2007) (holding that a complaint need not contain detailed factual allegations, but must contain more than "labels and conclusions" and "formulaic recitation of the elements of a cause of action will not do.").

[80] *See* Complaint, CM/ECF Doc. 1, ¶ 36.

[81] *See id.*

'derived from a common nucleus of operative fact.'"[82] In this case, the state court claims clearly arise from the same operative facts as Ms. Doe's 42 U.S.C. § 1983 claims.

"In adjudicating non-federal questions, a federal court must apply the law of the state."[83] Thus, where, as here, a federal court is hearing a state law claim over which it is exercising supplemental jurisdiction pursuant to 28 U.S. Code § 1367, the court is bound by the state supreme court's interpretation of state law.[84]

### B. Ms. Doe fails to properly plead her claim of gross negligence.

In one conclusory allegation set forth in her "Fourth Cause of Action," Ms. Doe alleges that Dr. Syverud's conduct constitutes gross negligence.[85] In the context of a motion to strike, the Virginia Supreme Court has held that, although ordinarily, questions of gross negligence should be considered by a jury, "… when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it the court's duty to so rule.[86] This is such a case.

---

[82] *Harvey v. Hall,* 2018 U.S. Dist. LEXIS 145390 at *13 - *14, citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 729 (1966).
[83] *United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).
[84] *See Id.*; *See also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 - 237, (1940) (explaining that "the highest court of the state is the final arbiter of what is state law," and "its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited, or restricted"; also holding that "a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable.").
[85] Complaint, CM/ECF Doc. 1, ¶ 36.
[86] *Frazier v. City of Norfolk,* 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987) citing *Community Bus Co. v. Windley,* 224 Va. 687, 689, 299 S.E.2d 367, 369 (1983).

22

Gross negligence "is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person."[87] The Virginia Supreme Court addressed the claim of gross negligence in the case of *Elliott v. Carter*.[88] The sad facts of the case involve the death of Caleb McKinley, the decedent, who drowned during a Boy Scout camping trip.[89] He could not swim.[90] Trevor Carter, a peer leader of Caleb's troop, led Caleb and other boys into the river along a partially submerged sandbar.[91] Those that could do so swam back to shore.[92] Trevor told Caleb and another boy to walk back to shore the way they had come, along the sandbar.[93] Caleb fell into the water, and he called to Trevor for help.[94] Trevor attempted to swim out to rescue Caleb, but was unsuccessful.[95] The Estate of Caleb McKinley filed suit against Trevor Carter.[96]

Citing *Cowan*, *supra,* the Virginia Supreme Court noted that gross negligence "is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person."[97] The court also noted that because "'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for

---

[87] *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487, 603 S.E.2d 916, 918 (2004) (citations omitted).
[88] 292 Va. 618, 791 S.E.2d 730 (2016).
[89] *Elliott* at 620, 731.
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *Id.* at 620-621, 731.
[96] *Id.* at 621, 731-732.
[97] *Id.* at 622, 732 citing *Cowan* at 487, 918.

gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care."[98]

In considering the *Elliott* facts, the Virginia Supreme Court held that, albeit possibly inadequate or ineffectual, Trevor's advice to Carter to follow the sandbar back to shore and his effort to save Carter once he fell in the river, "were not so insufficient as to constitute the indifference and utter disregard of prudence that would amount to a complete neglect for Caleb's safety, which is required to establish gross negligence.[99]  The court also reasoned that Trevor exercised some degree of care; therefore, "his conduct did not constitute gross negligence.[100]  In so finding, the Virginia Supreme affirmed the trial court's order of summary judgment in favor of Trevor Carter.[101]

Ms. Doe presented to the UVA Medical Center ED under an ECO as a suicidal patient who had run a hose from the exhaust pipe into the passenger compartment of her car.[102]  Dr. Syverud's actions, as alleged in the Complaint, do not demonstrate the indifference and utter disregard of prudence necessary to maintain a right of action for gross negligence.  In fact, his actions demonstrate exactly the opposite—efforts to evaluate and provide care to a patient with potentially

---

[98] *Id.,* citing *Kuykendall v. Young Life*, 261 Fed. Appx. 480, 491 (4th Cir. 2008) (relying on *Frazier*, 234 Va. at 392, 362 S.E.2d at 690-91, *Chapman*, 252 Va. at 190, 475 S.E.2d at 801, and *Cowan*, 268 Va. at 486-87, 603 S.E.2d at 918 to interpret Virginia law); s*ee*, e.g., *Colby v. Boyden*, 241 Va. 125, 133, 400 S.E.2d 184, 189, 7 Va. Law Rep. 1368 (1991) (affirming the circuit court's ruling that the plaintiff failed to establish a prima facie case of gross negligence when the evidence showed that the defendant "'did exercise some degree of diligence and care' and, therefore, as a matter of law, his acts could not show 'utter disregard of prudence amounting to complete neglect of the safety of another'").

[99] *Id.* at 623, 733.

[100] *Id.*

[101] *Id.  See also Roach v. Botetourt County Sch. Bd.*, 757 F. Supp. 2d 591, 597 (WDVA 2010) (Court granted Rule 12(b)(6) motion to dismiss claim of gross negligence, finding that the conduct of the defendant could be distinguished from, and was something less than the threshold for gross negligence, "where even slight diligence or scant care are absent.").

[102] Complaint, CM/ECF Doc. 1, ¶¶ 9, 10.

24

life-threatening medical issues. This is not gross negligence as the term is defined by Virginia law. Moreover, the totality of Ms. Doe's Complaint sounds in intentional conduct, not negligence. And her Complaint fails to plead the elements of a right of action sounding in gross negligence.[103] Her claim should fail.

### C. Dr. Syverud's medical care of Ms. Doe does not constitute assault and battery because the care Ms. Doe received was justified by Virginia law.

To properly plead a claim of battery, Ms. Doe would have to allege, "… an unwanted touching which is neither consented to, excused, nor justified."[104] As discussed, *supra*, in the context of Ms. Doe's constitutional claims, Dr. Syverud's care and treatment of Ms. Doe was justified by statute—Va. Code § 37.2-808. And because Dr. Syverud was legally justified with regard to the medical care and treatment that he provided to Ms. Doe, her battery claim must fail.[105] Further, apprehension of an unwanted touching that is legally justified—thus not a battery—cannot be an assault.[106]

### D. Ms. Doe's false imprisonment claim fails because Dr. Syverud's medical care was justified by Virginia law.

The legal analysis of Ms. Doe's false imprisonment claim is similar to that of her deficient battery claim. In Virginia, false imprisonment is defined as "the restraint of one's liberty without

---

[103] *See*, *e.g., Steward v. Holland Family Props., LLC,* 284 Va. 282, 292, 726 S.E.2d 251, 257 (2012) citing *Yuzefovsky*, 261 Va. 97, 102, 540 S.E.2d 134, 137 (2001) (explaining that legal conclusions are not taken as true in considering a demurrer under Virginia law.).

[104] *Koffman v. Garnett,* 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003), citing *Washburn v. Klara*, 263 Va. 586, 561 S.E.2d 682 (2002); *Woodbury v. Courtney*, 239 Va. 651, 391 S.E.2d 293 (1990).

[105] *See*, *e.g., Corbin v. Woolums*, 2008 U.S. Dist. LEXIS 95977 at *30 (EDVA 2008). *See also Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) (holding that "a legal justification for the act being complained of will defeat and assault or battery claim.") (citation omitted).

[106] *See Koffman* at 16, 261 (defining "assault" as "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery.") (citations omitted).

any sufficient legal excuse."[107]  "[A] Virginia plaintiff need only prove that he was detained; it is for the defendant to proffer an adequate legal justification warranting the detention."[108]  Dr. Syverud herein provides the necessary legal justification—Va. Code § 37.2-808.

Ms. Doe pleads, and this court must accept as true, that she arrived to the Emergency Department at UVA Medical Center pursuant to a law enforcement officer-issued ECO.[109]  And it is the statute authorizing the ECO, Va. Code § 37.2-808, that provides the legal justification for Dr. Syverud's actions, which Ms. Doe contends amount to false imprisonment.  But with a legal justification for her restraint, Ms. Doe's false imprisonment claim must fail.

IV.   **Ms. Doe's constitutional and state law claims are barred because they arise from a cause of action that involves her criminal attempt to commit suicide.**

A.   **Ms. Doe's constitutional claims are barred because they arise due to her criminal attempt to commit suicide.**

Ms. Doe's Complaint pleads that she undertook efforts to commit suicide, going so far as to specify a mechanism by which she attempted to commit suicide.[110]   She also pleads that she was an unwilling patient.[111]  Considering a well-publicized case, Justice Scalia concurred with the majority opinion in *Cruzan v. Dir., Mo. Dep't of Health*, and therein addressed the prospect of a hospital confronted with a suicidal patient and constitutional claims that follow:

> The third asserted basis of distinction—that frustrating Nancy Cruzan's wish to die in the present case requires interference with her bodily integrity—is likewise inadequate, because such interference is impermissible only if one begs the question whether her refusal to undergo the treatment on her own is suicide. It has always been lawful not only for the State, but even for private citizens, to interfere with bodily integrity to prevent a felony. *See* Phillips v. Trull, 11 Johns. 486 (N. Y. 1814); City Council v. Payne, 11 S.C. L. 475, 2 Nott & McC. 475 (S. C. 1821);

---

[107] *Lewis v. Kei*, 281 Va. 715, 724, 708 S.E.2d 884, 890 (2011) citing *Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 489, 50 S.E.2d 387, 388 (1948).

[108] *Figg v. Schroeder*, 312 F.3d 625, 642 (4th Cir. 2002) (citation omitted).

[109] Complaint, CM/ECF Doc. 1, ¶¶ 10, 11.

[110] *Id.*, ¶ 9.

[111] *Id.*, *passim.*

26

Vandeveer v. Mattocks, 3 Ind. 479 (1852); T. Cooley, Law of Torts 174-175 (1879); Wilgus, Arrest Without a Warrant, 22 Mich. L. Rev. 673 (1924); Restatement of Torts § 119 (1934). That general rule has of course been applied to suicide. At common law, even a private person's use of force to prevent suicide was privileged. Colby v. Jackson, 12 N.H. 526, 530-531 (1842); Look v. Choate, 108 Mass. 116, 120 (1871); Commonwealth v. Mink, 123 Mass. 422, 429 (1877); In re Doyle, 16 R.I. 537, 539, 18 A. 159, 159-160 (1889); Porter v. Ritch, 70 Conn. 235, 255, 39 A. 169, 175 (1898); Emmerich v. Thorley, 35 A.D. 452, 456, 54 N.Y.S. 791, 793-794 (1898); State v. Hembd 305 Minn. 120, 130, 232 N.W.2d 872, 878 (1975); 2 C. Addison, Law of Torts § 819 (1876); Cooley, supra, at 179-180. It is not even reasonable, much less required by the Constitution, to maintain that although the State has the right to prevent a person from slashing his wrists, it does not have the power to apply physical force to prevent him from doing so, nor the power, should he succeed, to apply, coercively if necessary, medical measures to stop the flow of blood. The state-run hospital, I am certain, is not liable under 42 U. S. C. § 1983 for violation of constitutional rights, nor the private hospital liable under general tort law, if, in a State where suicide is unlawful, it pumps out the stomach of a person who has intentionally taken an overdose of barbiturates, despite that person's wishes to the contrary.[112]

A corollary to the majority opinion, Justice Scalia's analysis is directly on point here. And applying this sound analysis here should lead to the conclusion that both Ms. Doe's constitutional claims under 42 U.S.C. § 1983, and her Virginia state law claims, should be dismissed.[113]

### B. Ms. Doe's state law claims are barred because they arise due to her efforts to commit suicide.

In Virginia, suicide is a crime. "We are aware of only one legislative enactment that addresses suicide as a crime. Code § 55-4 provides that '[n]o suicide . . . shall work a corruption of blood or forfeiture of estate.' Thus, although the General Assembly has rescinded the punishment for suicide, it has not decriminalized the act. Suicide, therefore, remains a common

---

[112] *Cruzan*, 497 U.S. 261, 298 (1990).

[113] *See also Hill v. Nicodemus*, 979 F.2d 987 (4th Cir. 1992) (holding that with respect to a 42 U.S.C. §1983 claim asserted on behalf of the estate of a pretrial detainee, the due process clause of the fourteenth amendment mandates the provision of medical care to detainees who require it. Further, in that framework, due process calls for the taking of appropriate steps to protect detainees who manifest suicidal intent. *See Buffington v. Baltimore County*, 913 F.2d 113, 120 (4th Cir. 1990), *reh'g denied, en banc; cert. denied*, *Buffington v. Baltimore County*, 113 L. Ed. 2d 216, 111 S. Ct. 1106 (1991).")

law crime in Virginia ..."[114] *Wackwitz* also specifies that suicide, a felony under English common law, remains a felony in Virginia.[115]

And it is also true that persons who attempt to commit felonies, either capital or noncapital, are also guilty of felonies.[116] Ms. Doe pleads in her Complaint that she attempted suicide.[117] By definition, Ms. Doe committed a felony. And she now seeks to profit from her crime.

The Fourth Circuit has considered the state claims of the estate of a deceased who committed suicide in the case of *Brown v. Harris*.[118] The estate asserted rights of action for wrongful death and gross negligence.[119] Agreeing with the magistrate judge that tried the case, the Fourth Circuit relied on *Wackwitz* to hold that "because suicide is a common law crime, it 'precludes recovery for injuries sustained as a result of the act."[120] The estate of the deceased in *Brown* was barred from asserting wrongful death and gross negligence claims arising out of a suicide. Ms. Doe should likewise be barred from seeking damages for injuries resulting from her attempt to commit suicide, which is also a crime under Virginia law.

### Conclusion

Wherefore, for the reasons set forth herein, Dr. Syverud respectfully requests that the Court grant his Motion, enter judgment in his favor and dismissing Ms. Doe's Complaint against him, and grant such other relief as the Court deems appropriate.

Respectfully submitted,

DR. SCOTT A. SYVERUD

---

[114] *Wackwitz v. Roy*, 244 Va. 60, 65, 418 S.E.2d 861, 864 (1992).
[115] *Id.* at 64-65, 864.
[116] *See* Va. Code §§ 18.2-25, 18.2-26.
[117] Complaint, CM/ECF Doc. 1, ¶ 9.
[118] 240 F. 3d 383 (4th Cir. 2001).
[119] *Brown* at 386.
[120] *Id.* citing *Wackwitz*, 244 Va. 60, 418 S.E.2d at 864.

By:    /s/ John E. Peterson Jr.
John E. Peterson Jr., VSB # 43609
Andrew G.H. Miller, VSB # 86867
Piedmont Liability Trust
1020 Ednam Center, Suite 100
Charlottesville, Virginia 22903
Telephone: (434) 296.2100
Fax: (434) 296.4001
jep3vf@virginia.edu
am2wf@virginia.edu

29

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2019, I electronically filed the foregoing

DEFENDANT DR. SCOTT A. SYVERUD'S BRIEF IN SUPPORT OF FRCP 12(c) MOTION FOR

JUDGMENT ON THE PLEADINGS with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to the following CM/ECF participants:


Jeffrey E. Fogel, Esq., VSB # 76345
913 E. Jefferson Street
Charlottesville, Virginia 22902
Telephone: 434.984.0300
Fax: 434.220.4852
Jeff.Fogel@gmail.com
*Counsel for Plaintiff*


Edward J. McNelis, III, Esq., VSB # 34003
Christopher F. Quirk, Esq., VSB # 88238
Sands Anderson, PC
1111 East Main Street, Suite 2400
PO Box 1998
Richmond, VA 23218-1998
Telephone: (804) 648-1636
Fax: (804) 783-7291
emcnelis@sandsanderson.com
cquirk@sandsanderson.com


By: _____/s/ John E. Peterson Jr._____
John E. Peterson Jr., VSB # 43609
Andrew G.H. Miller, VSB # 86867
Piedmont Liability Trust
1020 Ednam Center, Suite 100
Charlottesville, Virginia 22903
Telephone: (434) 296.2100
Fax: (434) 296.4001
jep3vf@virginia.edu
am2wf@virginia.edu
*Counsel for Defendant Scott A. Syverud, M.D.*

30