CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
05/09/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. Jones
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JANE DOE,<br><br>         *Plaintiff,*<br>v.<br><br>PAMELA SUTTON-WALLACE, *ET AL*,<br><br>         *Defendants.* | CASE NO. 3:18-CV-00041<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  On January 11, 2018, a law enforcement officer found Plaintiff Jane Doe attempting suicide and transported her to the University of Virginia ("UVA") Medical Center emergency department. Once at the emergency department, Plaintiff received treatment that she claims violated her constitutional rights and is actionable under Virginia law as gross negligence, assault and battery, and false imprisonment. Plaintiff has identified thirteen defendants in this action, one of whom, Defendant Dr. Scott A. Syverud, filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 26). The parties briefed the motion, and the Court held a hearing on the matter. Based on the current record, the Court concludes that Defendant Syverud is entitled to qualified immunity as to Plaintiff Doe's constitutional claims and that, as to Defendant Syverud, Plaintiff has failed to state a claim under Virginia law.

        **I.  Factual Background**

  On January 11, 2018, Plaintiff attempted suicide by running a hose from the exhaust pipe of her car into the passenger compartment. (Dkt. 1 ¶ 9). Plaintiff was found in her car by a police officer who had her transported to the UVA Medical Center emergency department ("Medical Center") "pursuant to a 'paperless' custody order." (*Id*. ¶ 10). While at the Medical

1

Center, Plaintiff objected to giving blood or urine samples, but Defendant Carter[1] informed Plaintiff that the "Emergency Custody Order authorized the taking of samples and the provision of medications even if she objected." (*Id*. ¶ 11). Because of her "strenuous objections to blood work and the urine sample," Plaintiff was administered injections meant to medically restrain her. (*Id*. ¶ 12) Plaintiff alleges that these medications were prescribed by Defendants Syverud and/or Root. (*Id*.). "Plaintiff was then surrounded by John Doe 1-5, her arm was held against her wishes, and blood extracted against her will." (*Id*. ¶ 13). Plaintiff alleges that, because the medications did not have their desired effect, Defendant Carter injected her with ketamine, "another psychoactive drug." (*Id*. ¶ 14). Plaintiff alleges that this injection was administered on the orders of Defendants Syverud and/or Root for the purpose of extracting urine. (*Id*.). Plaintiff claims that she was never advised regarding the administration or the side effects of the drugs. (*Id*. ¶ 15).

After the drugs were administered, Plaintiff claims Defendants Carter and Bateman requested Plaintiff be physically restrained for the purpose of extracting urine, and that those restraints were ordered by Defendants Syverud and/or Root. (*Id*. ¶ 16). John Does 1–5 assisted in physically restraining Plaintiff. (*Id*. ¶ 17). Because Plaintiff had refused to provide a urine sample, Defendants Syverud and/or Root, at the request of Defendant Carter, ordered the insertion of a urinary catheter into Plaintiff's bladder for urine extraction. (*Id*. ¶ 18). Defendants Jane Roes 1–3 assisted in this procedure. (*Id*. ¶ 19).

Plaintiff claims that, at all times relevant to the complaint, she "was competent to make

---

[1] The complete list of defendants is: Pamela Sutton-Wallace, Chief Executive Officer of the University of Virginia ("UVA") Medical Center; Dr. Kathleen Root, a physician employed at UVA Medical Center; Adam Carter, a Registered Nurse at the UVA Medical Center; Callie Bateman, a Registered Nurse at the UVA Medical Center; "Jane Roe" 1-3, unknown employees at the UVA Medical Center; and "John Doe" 1–5, unknown employees at the UVA Medical Center (collectively "Defendants").

decisions concerning her treatment." (*Id*. ¶ 20). Plaintiff is currently diagnosed with post traumatic stress disorder and has been actively involved in treatment for that condition, a condition "exacerbated" by Defendants' actions. (*Id*. ¶ 21). Plaintiff claims that it is the practice, in the Medical Center, "to force treatment and medications on unwilling but competent patients." (*Id*. ¶ 22).

Defendant Syverud admits that he was a medical doctor licensed to practice in the Commonwealth of Virginia, was a member of the clinical staff of the Medical Center, and that he was an attending physician for Plaintiff when she was transported to the Medical Center. (Dkt. 11 at 1). Defendant Syverud does not dispute that Plaintiff objected to the collection of blood and urine samples, but states "that because she was in emergency custody those specimens could be collected over her objection." (*Id*. at 2). Defendant Syverud does not contest that Plaintiff was combative, or that drugs and physical restraints were used in order to obtain blood and urine samples. (*Id*. at 2–3). He does not contest that these methods were used by Medical Center staff at the orders of a Medical Center physician. (*Id*. at 3). Defendant Syverud admits that a urine sample was obtained via a catheter. (*Id*.). Finally, Defendant Syverud "admits that Plaintiff was not determined to lack capacity to consent to treatment during the time she was a patient at the" Medical Center. (*Id*.).

## II. Legal Standard

A motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) is made after pleadings are closed, "but early enough not to delay trial." The standard for Rule 12(c) motions is the same as for motions made pursuant to Rule 12(b)(6). *Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405–406 (4th Cir. 2002). Accordingly, "we assume the facts alleged in the complaint are true and draw all reasonable factual inferences in

[Plaintiff's] favor." *Id.* However, the complaint must state a claim that is plausible on its face, and the Court will not accord the presumption of truth to legal conclusions couched as factual allegations. *McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582 (4th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). *See also Papasan v. Allain*, 478 U.S. 265, 286 (1986); *SD3, LLC v. Black & Decker, Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

### III. Argument

Defendant Syverud argues that judgment on the pleadings is appropriate because: (1) he is entitled to qualified immunity with respect to Plaintiff's § 1983 claims; (2) Plaintiff has failed to demonstrate Defendant Syverud acted under the color of state law;[2] (3) Defendant Syverud's conduct was legally justified or excused; (4) Plaintiff's state law claims fail to state a claim; and (5) Plaintiff's attempted suicide bars her federal and state law claims.[3] The Court first turns to the question of qualified immunity.

#### A. Qualified Immunity

"Generally, qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880–81 (4th Cir. 2015) (internal citations omitted). "Officials are not liable for bad guesses in gray areas; they are liable

---

[2] Defendant admits that he was a member of the clinical staff of the University of Virginia Medical Center, a state agency. (Dkt. 11 at 2); *see Rector & Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 591 S.E.2d 76, 78 (2004) (describing UVA as an agency of the Commonwealth); Va. Code § 23.1-2212 (designating the Medical Center as an "agency of the Commonwealth"). This is sufficient to properly allege that Defendant Syverud's actions were taken under color of state law. *See Victors v. Kronmiller*, 553 F.Supp.2d 533, 556–557 (W.D. Md. 2008) (finding allegations that the defendants were employees of state health agencies sufficient to determine that their action was "under color of state law").

[3] Because the Court finds that Defendant Syverud's motion should be granted on other grounds, it does not reach this issue.

4

for transgressing bright lines." *Id*. at 881 (internal quotations omitted). The Fourth Circuit's "qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id*. (citing *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014)). These two questions should be addressed "in the order . . . that will best facilitate the fair and efficient disposition of each case." *Id*.

Here, the Court will begin with the second prong of the qualified immunity analysis: whether a right was clearly established at the time of the alleged violation. This "turns on the objective legal reasonableness of [the defendant's action], assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 882. Therefore, the Court looks "not to whether the right allegedly violated was established as a broad general proposition, but whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Id*. (internal quotations omitted).

Plaintiff claims that Defendant Syverud violated her "protected liberty interest in refusing unwanted medical treatment," her right to give informed consent to medical treatment, and her right to be free of restraints. (Dkt. 1 ¶¶ 24, 28, 32). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *S.P. v. City of Takoma Park, Md*., 134 F.3d 260, 266 (4th Cir. 1998). To understand the contours of Plaintiff's rights, the Court must look to the "clearly established authority" that would have put Defendant Syverud "on notice that [his] conduct violated" Plaintiff's rights. *S.P.*, 134 F.3d at 266–67. Accordingly, the Court will examine the relevant constitutional and Virginia statutory law. *Id.*;

5

1. **Constitutional Law**

Fourth Circuit precedent provides guidance as to qualified immunity where plaintiffs challenge police seizures in the mental health context. It is "arguably clearly established that an officer must have probable cause to believe that [an] individual posed a danger to herself or others before involuntarily detaining the individual." *S.P.*, 134 F.3d at 266. However, "if the test of clearly established law were to be applied at this level of generality, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability." *Id*.

Accordingly, when addressing qualified immunity in cases involving seizures in the mental health context, the Fourth Circuit has undertaken a fact specific inquiry. *See id*. at 266–68. In many cases, the Court has found the seizing officers to be entitled to qualified immunity. *Id*. For example, in *S.P.*, the Fourth Circuit found that law enforcement officers acted reasonably because they "had ample opportunity to observe and interview" the plaintiff, "did not decide to detain [her] in haste," and acted pursuant to state law authorizing mental health seizures. *Id*. Similarly, in *Gooden v. Howard County, Md.*, 954 F.2d 960 (4th Cir. 1992), the Court found that officers acted objectively reasonably where they took a plaintiff into custody for a psychiatric evaluation based on their belief that she posed a threat to herself or others, despite the fact that the belief was mistaken. Finally, in *Raub*, the Fourth Circuit examined the precedent in this area to determine whether the defendant mental health evaluator was entitled to qualified immunity. 785 F.3d at 881. There, the plaintiff contented that the defendant violated his Fourth Amendment rights by recommending that the plaintiff be taken into custody for a mental health evaluation and by petitioning the state court for a temporary detention order. *Id*. The Fourth Circuit held that "to the extent the cases should have informed [the defendant's] conduct, they support the view that he acted reasonably under our prevailing legal standards," and defendant

was therefore entitled to qualified immunity. *Id*. at 883.

Where defendants were not entitled to qualified immunity, the Fourth Circuit found that evidence "was insufficient to establish probable cause to detain [the plaintiff] for an emergency mental evaluation." *Bailey v. Kennedy*, 349 F.3d 731, 741 (4th Cir. 2003). In *Bailey*, the Court found the evidence—a 911 call from a neighbor and a seemingly calm and rational plaintiff—insufficient to establish probable cause. *Id*. Similarly, in *Goines v. Valley Community Servs Board*, 822 F.3d 159 (4th Cir. 2016), the Court found that the evidence was insufficient for a reasonable officer to justify emergency mental-health detention. In that case, the plaintiff, who suffered from speech and other physical difficulties, "exhibited no signs of mental illness and made no threats to harm himself or others, but instead sought the help of the police to avoid a confrontation." *Id*. at 168. Accordingly, if there is sufficient evidence to justify a seizure in the mental health context, that will lend support to Defendant Syverud's argument that he is entitled to qualified immunity.

The Court next turns to a competent person's "constitutionally protected liberty interest in refusing unwanted medical treatment, which stems from an individual's Fourteenth Amendment right to life, liberty, and property. *See Cruzan by Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 278 (1990). There is little guidance regarding qualified immunity in this context, but the Court must analyze the contours of this right to determine whether a reasonable official in Defendant's position would understand that his actions violated that right. *See S.P.*, 134 F.3d at 266. As with the right to be free from seizure without probable cause in the mental health context, it is not sufficient that a general right to consent to medical treatment is established. *Id*. Thus, the proper inquiry is whether it would be clear to a reasonable official that his actions in treating a suicidal, competent, but unwilling patient brought in under state custody

7

would violate the patient's clearly established rights.

The Court recognizes that a "physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989). When medical treatment is not necessary or justified, a detainee "maintains some legitimate expectation of privacy in his person." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). However, the contours of these rights are less clear where an individual is in state custody, but is not a convicted prisoner, and medical care is necessary. *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) ("The precise scope of this obligation to provide medical care is unclear.") (internal quotations and citations omitted); *Buffington v. Baltimore County, Md.*, 913 F.2d 113 (4th Cir. 1990) (holding that the state had an affirmative due process obligation to prevent detainee from committing suicide, even though detention was at the request of family).

In *Hill*, 979 F.2d at 991, the question before the Court was whether officials had violated their obligations in failing to prevent the suicide of a pre-trial detainee. . In that case, the Court stated that "[t]he due process clause mandates the provision of medical care . . . [and] calls for the taking of appropriate steps to protect detainees who manifest suicidal intent." *Id*. Accordingly, if Plaintiff was properly in state custody at the time she was presented to Defendant Syverud, there are few bright lines regarding her rights, providing further support to the conclusion that Defendant Syverud is entitled to qualified immunity. In this case, the question of custody is largely dependent on the controlling Virginia statutes, thus the Court will turn to that issue.

2. **Controlling Virginia Law**

Defendant claims that Plaintiff was in state custody pursuant to Va. Code Ann. § 37.2-

8

808(G) at all relevant times and that this statute authorizes the evaluation and treatment he provided. (Dkt. 27 at 2). Section 37.2-808(G) allows a law-enforcement officer who "has probable cause to believe that a person meets the criteria for emergency custody" to "take that person into custody and transport that person to an appropriate location to assess the need for hospitalization or treatment without prior authorization." Emergency custody is authorized where an officer has probable cause to believe that an individual "has a mental illness and that there exists a substantial likelihood that, as a result of mental illness, the person will. . . (a) cause serious physical harm to himself or others . . . (ii) is in need of hospitalization or treatment, and (iii) is unwilling to volunteer or incapable of volunteering for hospitalization or treatment." § 37.2-808(A). Section 37.2-808 further contemplates the need to obtain "emergency medical treatment or further medical evaluation" at any time for a person in custody pursuant to the section. *See* § 37.2-808(I) ("Nothing herein shall preclude a law-enforcement officer or alternative transportation provider from obtaining emergency medical treatment or further medical evaluation at any time for a person in his custody as provided in this section.")

Plaintiff argues that nothing in § 37.2-808 authorizes medical treatment beyond a mental evaluation, and that another code section, Va. Code § 37.2-1101, should therefore control this Court's analysis. Section 37.2-1101 states that medical treatment can only be authorized by an appropriate judge if the judge finds, by clear and convincing evidence, that (1) the person is incapable of making an informed decision or communicating such a decision and (2) the proposed treatment is in the best interest of the person. A judge, not a doctor, Plaintiff argues, is the only person authorized to order treatment or examination under Virginia law pursuant to § 37.2-1101. This argument fails. First, it does not consider § 37.2-808(I), which explicitly contemplates "emergency medical treatment or further medical evaluation," where an individual

9

has been taken into custody pursuant to § 37.2-808. Second, the parties agree that Plaintiff was competent, and thus there is no reason to believe that Defendant Syverud or any other actor should have considered it appropriate to obtain an order pursuant to § 37.2-1101.

The constitutional and statutory laws discussed above were in place at the time of Defendant Syverud's actions. Thus, the Court must look to whether, in light of these rules, "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Raub*, 785 F.3d at 882. There is no dispute that Plaintiff's attempted suicide gave law enforcement officers probable cause to believe that she met the criteria for emergency custody as required by Fourth Circuit precedent and as set forth in § 37.2-808. Thus, a reasonable actor in Defendant's position would have no cause to believe Plaintiff's seizure was in violation of her Fourth Amendment rights. Further, Defendant Syverud states, and Plaintiff agrees, that Plaintiff "was an unwilling suicidal patient known to have intentionally ingested carbon monoxide." (Dkts. 27 at 11, 1 ¶ 9). Thus, Defendant Syverud could not know "whether she ingested other toxic substances that she chose not to disclose to increase the likelihood of success in her efforts to kill herself." (Dkt. 28 at 11). Given that Plaintiff was properly brought to Defendant Syverud pursuant to a statute that authorizes "emergency medical treatment or further medical evaluation," Defendant Syverud's belief that he had a right to perform the procedures necessary to treat Plaintiff was reasonable. § 37.2-808(I). Furthermore, insofar as precedent should have informed Defendant Syverud's actions, it supports his belief that he had a duty to prevent Plaintiff's suicide. *See Hill* 979 F.2d at 991 (4th Cir. 1992).

Ultimately, based on the controlling case law and Virginia statutory scheme, it would not "be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Raub*, 785 F.3d at 882. Thus, Defendant is entitled to qualified immunity as to Plaintiff's

10

constitutional claims.

### B. State Law Claims

Plaintiff's "fourth cause of action" alleges that Defendants' conduct constituted "gross negligence as well as assault and battery and false imprisonment." (Dkt. 1 at 6). The Court has the authority to hear these state law claims pursuant to 28 U.S.C. § 1367. The Court's "decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009). While Defendant Sevyrud is entitled to qualified immunity as to Plaintiff's Constitutional claims, there are other defendants against whom Plaintiff's federal claims remain pending. (Dkts. 1, 18). Thus it is proper for this court to exercise supplemental jurisdiction over the state law claims. *See Jarzyna v. Home Properties, .P.,* 763 F.Supp.2d 742, 753 (E.D. Pa. 2011) ("Even though the Court dismissed the one federal claim brought against Defendant L.P., the pendency of federal claims against co-defendant [] permits jurisdiction."). For the reasons that follow, Plaintiff's state law claims against Defendant Syverud will be dismissed.

#### 1. False Imprisonment and Assault and Battery

"In Virginia, a false imprisonment is 'the direct restraint by one person of the physical liberty of another without adequate legal justification.'" *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) (quoting *Figg v. Schroeder*, 312 F.3d 625, 637 (4th Cir. 2002)). "Virginia defines battery as an unwanted touching which is neither consented to, excused, nor justified,' and an assault as 'an act intended to cause either harmful or offensive contact with another person or apprehension of such conduct, and that creates in that other person's mind a reasonable apprehension of an imminent battery.'" *Id*. (quoting *Koffman v. Garnett*, 265 Va. 12, 574 S.E.2d 258, 261 (2003)). "A legal justification for the act being complained of will defeat an

11

assault or battery claim." *Id.* (internal citations omitted).

Here, as discussed above, Virginia Code § 37.2-808 authorizes the care and treatment Defendant Syverud provided. It is undisputed that law enforcement officers brought Plaintiff to the Medical Center because they found Plaintiff in her car attempting to commit suicide by placing a hose in the exhaust pipe of her car running into the passenger compartment. (Dkt. 1 at 2–3). Accordingly, there was probable cause to believe that Plaintiff met the criteria set forth in § 37.2-808(A). Pursuant to the emergency custody order, Plaintiff was taken by a rescue squad to the emergency room, where Defendant Syverud was justified in providing the emergency medical treatment and/or evaluation as contemplated in § 37.2-808(I). Therefore, his actions were legally justified and Plaintiff cannot sustain her claims of false imprisonment or assault and battery under Virginia law.

**2. Gross Negligence**

Gross negligence "is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter*, 292 Va. 618, 622, 791 S.E.2d 730 (2016). "Because 'the standard for gross negligence in Virginia is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Id.* (quoting *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008)). Defendant Syverud argues that Plaintiff's complaint sounds in intentional conduct and fails to plead the elements of a right of action sounding in gross negligence. (*Id.*). Plaintiff counters that because Defendant Syverud "asserts that he did not intend any harm to [Plaintiff], his conduct can be characterized as willful and wanton and therefore gross negligence." (Dkt. 28 at 11). As discussed below, Defendant Syverud's argument is persuasive.

12

In *Infant C. v. Boy Scouts of America, Inc.*, the Supreme Court of Virginia noted the need to distinguish "between an intentional act done without intending harm, on one hand, and an intentional act done with intent to harm, on the other." 239 Va. 572, 582 (1990). The Court further stated that "an actor guilty of willful and wanton conduct intends his act, but not the resulting harm." *Id*. (internal citations omitted). However, willful and wanton conduct was not equated with gross negligence. Rather, where the evidence confirmed allegations of willful and wanton misconduct, the court only remanded the count that specifically alleged such misconduct, but upheld the dismissal of the claim of gross negligence. *Id*. at 583–84.

"Gross negligence requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Elliot*, 292 Va. at 622 (citing *Thomas v. Snow*, 162 Va. 654, 661 (1934) ("Ordinary and gross negligence differ in degree of inattention"; while "[g]ross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence," "it is something less than . . . willful, wanton, and reckless conduct.")). Here, the complaint states that "[t]he conduct of [Defendants] as described herein constitutes gross negligence as well as assault and battery and false imprisonment." (Dkt. 1 ¶ 36). Plaintiff's ultimate claim is that Defendant Syverud intentionally ordered the allegedly harmful procedures, and did so, not with the intent to harm her, but with the willful and wanton disregard for her rights. This does not charge "the heedlessness, inattention, or inadvertence which is the hallmark of negligence. Rather, [it] charges the recklessness and conscious characteristic of willful and wanton conduct." *Elliot*, 292 Va. at 582. Accordingly, Plaintiff fails to plead the elements of a right of action sounding in gross negligence.

13

## IV.   Conclusion

For the foregoing reasons, Defendant Syverud's motion for judgment on the pleadings will be granted.  An appropriate order will issue.

Entered this  9th day of May, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE