UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

**JANE DOE,**

  *Plaintiff,*

v.            Civil Action No. 3:18-cv-00041

**PAMELA SUTTON-WALLACE,
DR. SCOTT A. SYVERUD,
DR. KATHLEEN ROOT,
ADAM CARTER,
CALLIE BATEMAN,
JANE ROE 1-3 and
JOHN DOE 1-5,**

  *Defendants.*

## MEMORANDUM IN SUPPORT OF DEFENDANTS SUTTON-WALLACE, ROOT, CARTER, AND BATEMAN'S JOINT RULE 12(c) MOTION

  Defendants Pamela Sutton-Wallace, Kathleen Root, MD, Adam Carter, RN, and Callie Bateman, RN, by counsel, submit their joint Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil procedure ("Rule 12(c)") for the following reasons.

### BACKGROUND

  On June 13, 2018, Plaintiff filed a Complaint against Dr. Scott A Syverud ("Dr. Syverud"), Dr. Kathleen Root ("Dr. Root"), Adam Carter, RN ("Nurse Carter"), Callie Bateman, RN (Nurse Bateman), and eight fictitious Defendants (Jane Roes 1-3 and John Does 1-5), all in their individual capacities. Also, in her Complaint, Plaintiff seeks injunctive relief against Pamela Sutton-Wallace ("Sutton-Wallace"), in her official capacity as the CEO of the University of Virginia ("UVA") Medical Center, related to any future medical care that she may receive at UVA Medical Center. Through this injunction, Plaintiff seeks to limit the care that nurses and

doctors at UVA Medical Center may provide her during future visits to the emergency department.

After Dr. Syverud filed a motion pursuant to Rule 12(c) (*Defendant Dr. Scott A. Syverud's FRCP 12(c) Motion for Judgment on the Pleadings*, ECF No. 26, February 1, 2019) this Court entered an Order (ECF No. 33) and Memorandum Opinion (ECF No. 32) ("Opinion") on May 9, 2019. In that Opinion, this Court dismissed each of Plaintiff's claims against Dr. Syverud for various reasons. (*See* ECF No. 32, pp. 4-14.)

Under the standard set forth in the Opinion, Defendants Root, Bateman, and Carter, along with the eight fictitious Defendants, are entitled to judgment on the pleadings as to the Complaint's four claims. Separately, Defendant Sutton-Wallace is entitled to judgment on the pleadings as to Plaintiff's demand for injunctive relief.

## RELEVANT ALLEGATIONS

The Complaint sets forth various due process violations and other constitutional claims, as well as Virginia state tort law claims of gross negligence, assault and battery, and false imprisonment. (*See* ECF No. 1, ¶¶ 23-37.) These claims arise from medical care provided to Plaintiff on January 11, 2018 in the emergency department at the UVA Medical Center. (*Id.* at ¶ 10, *et seq*.) According to the Complaint:

- Plaintiff attempted suicide on January 11, 2018 by running a hose from the exhaust pipe into the passenger compartment of her car. (*Id.* at ¶ 9.)

- Pursuant to a paperless Emergency Custody Order[1], a law enforcement officer delivered Plaintiff to the Emergency Department. (*Id*., ¶¶ 10, 11.)

---

[1] Va. Code § 37.2-808(G) grants authority to a law enforcement officer, who upon probable cause believes that a person meets the criteria for emergency custody as stated in this section, to take that person into custody without prior authorization, and transport that person to an appropriate location to assess the need for hospitalization or treatment.

2

- At all relevant times, Plaintiff was competent to make decisions concerning her treatment. (*Id.*, ¶ 20.)

- Plaintiff was an unwilling patient. (*Id.*, ¶ 22.)

- Dr. Root, acting under color of state law, was one of Plaintiff's physicians in the emergency department. (*Id.*, ¶ 4.)

- Nurse Carter, acting under color of state law, was one of Plaintiff's nurses in the emergency department. (*Id.*, ¶ 5.)

- Nurse Bateman, acting under color of state law, was one of Plaintiff's nurses in the emergency department. (*Id.*, ¶ 6.)

- Jane Roes 1-3, acting under color of state law, were employees in the emergency department who assisted in treating Plaintiff. (*Id.*, ¶ 7.)

- John Does 1-3, acting under color of state law, were employees in the emergency department who assisted in treating Plaintiff. (*Id.*, ¶ 8.)

- Plaintiff objected to having her blood drawn and to providing a urine sample. (*Id.*, ¶ 11.)

- Upon Plaintiff's information and belief, Dr. Syverud and/or Dr. Root ordered the administration of medications, including, zyprex [sic] a psychoactive drug; Benadryl; and Ativan, a sedative also used to combat anxiety. (*Id.*, ¶ 12.) Following this order, Nurse Carter administered these drugs to Plaintiff. (*Id.*)

- Plaintiff's arm was held against her wishes, while blood was extracted from her arm. (*Id.*, ¶ 13.) John Does 1-5 surrounded Plaintiff during this encounter. (*Id.*)

- Upon Plaintiff's information and belief, Dr. Syverud and/or Dr. Root later ordered the administration of Ketamine, a psychoactive drug that induces a trance-like state while providing sedation, and memory loss. (*Id.*, ¶ 14.) Following this order, Nurse Carter administered Ketamine to Plaintiff. (*Id.*)

- Plaintiff was not advised of the drugs administered to her, and she was not told of their likely effects and potential side effects. (*Id.*, ¶ 15.)

- At the request of Nurses Carter and Bateman, Dr. Syverud and/or Dr. Root ordered Plaintiff to be placed in physical restraints for the sole purpose of extracting urine. (*Id.*, ¶ 16.)

- At the request of Nurse Carter, Dr. Syverud and/or Dr. Root entered an order to catheterize Plaintiff to obtain urine. (*Id*., ¶ 18.) Plaintiff claims that Jane Roes 1-3 assisted in extracting the urine from Plaintiff. (*Id*. ¶ 19.)

Plaintiff's Complaint sets forth four "causes of action." The First Cause of Action asserts violation of due process, alleging that Plaintiff has a protected liberty interest in refusing unwanted medical treatment. In turn, Plaintiff claims that each individual Defendant violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution. (*Id*., ¶¶ 23-26.)

In her Second Cause of Action, Plaintiff asserts that she has a protected liberty interest in knowing which drugs she was administered, and to give informed consent regarding the same. Plaintiff claims Dr. Syverud, Dr. Root, Nurse Carter, and Nurse Bateman violated her right to know which substances were injected into her body, and to give informed consent for those drugs. According to Plaintiff, this conduct violated her rights under the Fourteenth Amendment. (*Id*., ¶¶ 27-30.)

In her Third Cause of Action, Plaintiff asserts that the Fourth and Fourteenth Amendments confer a right to be free from restraints. Plaintiff contends that each individual Defendant violated her supposed right to be free of medical and physical restraints within the context of the allegations she has pled in her Complaint. (*Id*., ¶¶ 31-34.)

In her Fourth Cause of Action, Plaintiff asserts three Virginia state law claims, alleging that the aforesaid conduct by each individual Defendant constitutes gross negligence, assault and battery, and false imprisonment. (*Id*., ¶¶ 35-37.)

For each of these claims, Plaintiff demands compensatory damages and attorneys' fees. (*Id*., pp. 6, 7.) Additionally, Plaintiff demands the following injunctive relief from Sutton-Wallace in her official capacity of as the CEO of UVA Medical Center:

4

1. An injunction directed at Defendant Pamela Sutton-Wallace to require all physicians, nurses and other medical care providers at the University of Virginia Medical Center to inform Plaintiff of the medications being administered [to] her and to obtain consent for the use of those medications;

2. An injunction directed at Defendant Pamela Sutton-Wallace to require all physicians, nurse and other medical care providers to respect the right of Plaintiff to refuse medication or other treatment; [and]

3. An injunction directed at Defendant Pamela Sutton-Wallace to require all physicians, nurses and other medical care providers not to use restraints on Plaintiff for the purpose of administering medications or providing treatment against her wishes.

(*Id*.) Based on these allegations, these Defendants are entitled to judgment on the pleadings pursuant to Rule 12(c).

## LEGAL STANDARDS

### A. Rule 12(c) Standard of Review

"The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States,* 702 F.3d 749, 751-52 (4th Cir. 2012)). "Therefore, a motion for judgment on the pleadings 'should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Id.* (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Id.* (citing *Butler,* 702 F.3d at 752).

To survive this motion, the Complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A proper complaint needs "more than labels and conclusions, and a formulaic recitation of the

5

elements of a cause of action will not do." *Id.* Although this Court must view the facts in the light most favorable to Plaintiff, this Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Because this Court is "not bound to accept as true a legal conclusion couched as a factual allegation," it must first identify and disregard averments that "are no more than conclusions [that] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### B. Law of the Case Doctrine

"The law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *JH v. Henrico County Sch. Bd.*, 395 F.3d 185, n. 9 (4th Cir. 2005) (quoting *Arizona v. California*, 460 U.S. 605, 618, 75 L. Ed. 2d 318, 103 S. Ct. 1382 (1983)).

### ARGUMENT

### A. Defendants Root, Carter, Bateman, and the Eight Fictitious Defendants Are Entitled to Qualified Immunity Against Plaintiff's Constitutional Claims.

Because Dr. Syverud was entitled to qualified immunity, Defendants Root, Carter, Bateman, and the eight fictitious Defendants are also entitled to qualified immunity. In the Opinion, this Court held that Dr. Syverud had a reasonable "belief that he had a right to perform the procedures necessary" to treat Plaintiff's risks associated with her recent suicide attempt. (*See* ECF No. 32, p. 10.) To reach this conclusion, this Court reviewed the context of Plaintiff's arrival to the emergency department, the care she received, and the statutory language of Virginia Code §§ 37.2-808 and 37.2-1011. (*Id.* at 9-11.)

6

For these Defendants, Plaintiff alleges that they participated in the same care plan that Dr. Syverud directed during identical circumstances. Consequently, under §§ 37.2-808 and 37.2-1011, these Defendants are equally entitled to qualified immunity.

### 1. Dr. Root

Plaintiff makes the same allegations against Dr. Root as she did against Dr. Syverud. Indeed, the allegations against Dr. Root are made against "Dr. Syverud and/or Dr. Root," with no meaningful distinction between their alleged conduct. (*See* ECF No. 1, ¶¶ 12, 14, 16, 18.) Therefore, under the same standard that applied to Dr. Syverud in the Opinion, Dr. Root should also be granted qualified immunity as to Causes of Action I-III.

### 2. Nurse Carter

Nurse Carter is entitled to qualified immunity because he was alleged to have carried out the orders of "Dr. Syverud and/or Dr. Root." Specifically, Plaintiff claims that Nurse Carter administered medications, which were ordered or "prescribed by Defendant's Dr. Syverud and/or Root." (ECF No. 1, ¶¶ 12, 14.) Also, Plaintiff claims that, at the request of Nurse Carter, Dr. Syverud and/or Dr. Root ordered that Plaintiff be placed into restraints and have her urine extracted. (*Id.*, ¶¶ 16-19.) Nothing in these allegations makes Nurse Carter's decisions any less reasonable than Dr. Syverud's or Dr. Root's. Moreover, both Dr. Syverud and Nurse Carter are alleged to have acted in concert to deliver care that this Court found not to violate any clearly defined right. As such, like Dr. Syverud, Nurse Carter is entitled to qualified immunity as to Causes of Action I-III.

### 3. Nurse Bateman

Likewise, the sole allegation against Nurse Bateman is that she joined Nurse Carter in requesting that Dr. Syverud and/or Dr. Root order that Plaintiff be placed in restraints "for the sole purpose of extracting urine from Plaintiff." (*Id*. at 16.) Thus, like Nurse Carter, Nurse Bateman merely joined Dr. Syverud and/or Dr. Root in the alleged process to restrain Plaintiff. And, because this process did not violate Plaintiff's clearly established rights, Nurse Carter is entitled to qualified immunity as to Causes of Action I-III.

### 4. Jane Roes 1-3 and John Does 1-5

Despite having been neither identified nor served, Jane Roes 1-3 and John Does 1-5 are also entitled to qualified immunity. The allegations against these two groups of fictitious Defendants come in two paragraphs of the Complaint. First, Plaintiff claims that, following "orders from Dr[.] Syverud and/or Dr. Root," "John Does 1-5 assisted in placing Plaintiff in restraints and otherwise sought to physically restrain Plaintiff." (*Id*. at ¶¶ 16, 17.) Second, following "an order [that] had been obtained from Dr[.] Syverud and/or Dr. Root," "Jane Roes 1-3 assisted in extracting the urine from Plaintiff." (*Id*. ¶¶ 18, 19.)

These allegations show that each fictitious Defendant acted pursuant to orders from Dr. Syverud and/or Dr. Root. By following the orders of Dr. Syverud and/or Dr. Root, Jane Roes 1-3 and John Does 1-5 are no less entitled to qualified immunity than Dr. Syverud and Dr. Root. Therefore, no matter the identity of John Does 1-5 and Jane Does 1-3, they are entitled to qualified immunity to Causes of Action I and III as a matter of law.

### B. **Plaintiff's State Law Claims for Damages Should Be Dismissed.**

#### 1. False Imprisonment and Assault and Battery

In the Opinion, this Court held that "Defendant Syverud was justified in providing the emergency medical treatment and/or evaluation as contemplated in § 37.2-808(I). Therefore, his actions were legally justified, and Plaintiff cannot sustain her claims for false imprisonment or assault and battery under Virginia law." (ECF No. 32, p. 12.) For reasons discussed above, these Defendants also justifiably acted within the parameters of §37.2-808(I). Therefore, Plaintiff's claims of false imprisonment and assault and battery should be dismissed against them as well.

#### 2. Gross Negligence

In the Opinion, this Court held that Plaintiff failed "to plead the elements of a right of action sounding in gross negligence" because Plaintiff alleged that Dr. Syverud harmed her through purely intentional conduct. (*Id*. at 13.) Because the claims against Defendants Root, Bateman, Carter, Jane Roes 1-3, and John Does 1-5 are similarly styled as intentional conduct, each of these Defendants is also entitled to judgment on the pleadings.

Moreover, even if Plaintiff had alleged that these Defendants did not act intentionally, but with complete neglect of Plaintiff's safety, the allegations in the Complaint do not meet the substantive requirements for gross negligence. When applying substantive Virginia law, the trial court has a duty to dismiss claims of gross negligence when a defendant provides a plaintiff with "even scant care." *See Elliott v. Carter,* 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (citing *Chapman v. City of Virginia Beach*, 252 Va. 186, 190, 475 S.E. 2d 798, 800-01 (1996)). The question before the Court in *Elliot* was whether a child's drowning during a Boy Scout camping trip resulted from the gross negligence of his Senior Patrol Leader, the defendant. *Id*.

9

It was undisputed that the defendant knew that the child could not swim, before leading him along a partially submerged sandbar, without a life vest, 150 yards into the Rappahannock River. *Id*. at 731. After the defendant decided to swim back to the bank without the child, he realized that the child was struggling to return to safety on his own. *Id*. In what the dissent described as "an ineffectual and doomed to fail rescue attempt," the defendant swam towards the child, before telling him to gain footing on the sandbar and come back. *Id*. at 731- 32 (Justice McCullough, joined by Justice Mims, dissenting). *Id*. However, the majority held that, as a matter of law, the defendant was not grossly negligent because he offered some measurable amount of care to the decedent child. *Id*. at 732-33. The Court concluded that, because the defendant swam towards the child and told him to look for the sandbar, no reasonable jury could conclude that the defendant failed to exhibit "some care" for the child. *Id*. Thus, under Virginia law, a demonstration of "some care" defeats a claim for gross negligence. *Id*.; *see also Murray v. Correct Care Solutions, LLC*, No. 3:16-cv-00279-JAG, 2017 U.S. Dist. LEXIS 7244, *6 (E.D. Va. January 18, 2017) (interpreting *Elliot*) ("In other words, a claim of gross negligence fails when the defendants exercised some degree of care.").

Under this standard, Plaintiff cannot show that these Defendants treated her with gross negligence, because each of them provided her with medical care during the supposed instances of gross negligence. Specifically, Plaintiff alleges that Dr. Root, Nurse Carter, Nurse Bateman, and the eight fictitious Defendants collectively extracted blood and urine from Plaintiff as part of treating her recent suicide attempt. Regardless of Plaintiff's desire at that time (and, alarmingly, now) to attempt suicide on her terms, the concerted acts of these Defendants cannot be described as less than "some care" or no care at all. Therefore, Dr. Root, Nurse Carter, and Nurse Bateman are each entitled to judgment on the pleadings as to Plaintiff's claim of gross negligence.

10

## C. **Plaintiff Is Not Entitled to Her Proposed Injunctive Relief.**

Finally, Plaintiff's demands for injunctive relief have no merit. The Fourth Circuit has explained that "federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). "To obtain such an injunction, a plaintiff must show (1) irreparable injury, (2) remedies at law 'are inadequate to compensate for that injury,' (3) 'the balance of hardships between the plaintiff and defendant' warrants a remedy, and (4) an injunction would not disserve the public interest." *Raub v. Campbell*, 785 F.3d 876, 885-886 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57, 130 S. Ct. 2743, 177 L. Ed. 2d 461 (2010)).

Further, "[w]here a § 1983 plaintiff also seeks injunctive relief, it will not be granted absent the plaintiff's showing that there is a 'real or immediate threat that [he] will be wronged again . . . in a similar way.'" *Id*. (citations omitted). To make this showing, "past wrongs do not in themselves amount to that real and immediate threat of injury." *Id*. (citations omitted). Accordingly, in *Raub*, the Fourth Circuit denied a plaintiff's requested injunction to prevent officers from subjecting him to "unreasonable seizures and retaliation because of his political beliefs." *Id*. The Court reasoned that the plaintiff's claims about future seizures and retaliation "were merely speculative, such that he [could not] make out 'this prerequisite of equitable relief.'" *Id*.

As a threshold matter, like in *Raub*, Plaintiff's proposed injunctions are based on a speculative occurrence of future violations that do not merit such relief. Specifically, Plaintiff has no basis to believe that she faces an imminent threat of similar treatment at UVA Medical center following an ECO, unless she attempts suicide or some other criminal act in the Charlottesville area soon. However, the Supreme Court and Fourth Circuit advise this Court not to assume that Plaintiff will engage in future criminal conduct as a predicate to finding that she

11

faces an imminent risk of injury.² Thus, because the Complaint shows that Plaintiff has no real or immediate threat of being treated in a similar manner again, Plaintiff is not entitled to her requested injunctions.

Moreover, Plaintiff's proposed injunctions do not meet the four elements set forth in *Raub*. Under the first element, Plaintiff has not shown that she has suffered or is likely to suffer an irreparable injury absent this relief. Indeed, the medical care that Plaintiff complains about in this case does not violate any clearly established state or federal laws. (*See* ECF No. 32, pp. 6-10.) Thus, a repeated incident of the same or similar treatment at UVA Medical Center does not create a prospective risk of injury to Plaintiff.

Similarly, under the second element, Plaintiff's lack of a prospective injury in this case needs neither a common law nor equitable remedy. As discussed above, even if Plaintiff were to receive the exact same life-saving care for a future suicide attempt, that care would not likely cause her any injuries. Without such an injury, compensatory damages of zero dollars would be adequate, which renders the extraordinary relief of an injunction excessive and unfounded.

Third, under the balance of hardships, Plaintiff faces no plausible hardship from being treated as she was in this case during future encounters with UVA Medical Center. Again,

---

² *See Lane v. Williams*, 455 U.S. 624, 633 n.13, 102 S. Ct. 1322, 71 L. Ed. 2d 508 (1982) ("Respondents themselves are able—and indeed required by law—to prevent [future violations of state law] from occurring."); *O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) (declining to issue an injunction against enforcement of criminal laws because the Supreme Court of the United States assumed the "[plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners"); *Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007) (holding that no reasonable likelihood of repetition existed because the Fourth Circuit would not "forecast bad behavior" by the inmate); *Slade v. Hampton Rds. Reg'l Jail,* 407 F.3d 243, 249 (4th Cir. 2005) ("Because we presume that [the petitioner] will abide by the criminal laws of Virginia in the future, we do not believe there is a reasonable probability that he will return to the Jail as a pretrial detainee. Accordingly, [petitioner's] claim for injunctive relief is moot.").

because Plaintiff suffered no cognizable violation of her rights during her care in this case, Plaintiff faces no cognizable hardship should this incident repeat itself. Meanwhile, Sutton-Wallace, in her official capacity as CEO of the entire Medical Center, would face undue hardship if Plaintiff were granted her proposed injunctions. Specifically, implementing a bespoke ECO or suicide care plan for Plaintiff places an administrative burden on Sutton-Wallace and UVA Medical Center as a whole. This burden is even greater when considering the prospect of contempt proceedings, litigation costs, penalties, and the general waste associated with allowing Plaintiff to sue the UVA Medical Center for failing to abide by her personal, judicially ordered care plan. At minimum, the balance of hardship weighs against granting Plaintiff's proposed injunctions.

Finally, this requested relief violates public policy. This Court routinely refuses to second guess medical decisions when evaluating injunctions requiring a certain course of care for inmates.[3] In this case, the same principles should apply. Respectfully, this Court should not create ex-ante limits on the care that Plaintiff may receive if she presents to UVA Medical Center again under an ECO. Like in the correctional context, deference toward the judgment of medical professionals is wise for several reasons.

First, the medical providers at UVA Medical Center are better equipped to make real-time medical determinations when treating Plaintiff than this Court is equipped to order specific care for Plaintiff in future situations. Second, even if Plaintiff worries that she may face a similar

---

[3] *See, e.g.*, *Sprinkle v. Barksdale*, No. 7:08-cv-00430-GEC, 2008 U.S. Dist. LEXIS 79008, *6-8 (W.D. Va. Oct. 7, 2008) (citing *Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975)) ("This court cannot second guess the doctor's medical judgment that the [care] currently provided to [the plaintiff] are medically appropriate for his conditions"); *Lake v. Johnson*, No. 7:08-cv-00378-JCT, 2008 U.S. Dist. LEXIS 50762, *4 (W.D. Va. July 1, 2008) (citing *Russell*, 528 F.2d at 318 (Questions of medical judgment are not subject to judicial review).

13

intervention during a future suicide attempt, this Court should not indulge her preference to handcuff medical providers from saving her life. Rather, granting these injunctions could assist Plaintiff's sad and illicit motives to terminate her life.[4] Finally, if this Court were to grant Plaintiff her injunctions, it would invite other psychologically vulnerable individuals to seek similar relief. For these reasons, an injunction against Pamela Sutton-Wallace should be denied with prejudice.

## CONCLUSION

For the forgoing reasons, these Defendants respectfully ask this Court to grant this motion and dismiss all claims against these Defendants with prejudice.

Respectfully submitted,
**PAMELA SUTTON-WALLACE**
**KATHLEEN ROOT, M.D.**
**ADAM CARTER**
**CALLIE BATEMEN**

/s/         *Christopher F. Quirk*
Edward J. McNelis, III, Esq., VSB 34003
Christopher F. Quirk, Esq., VSB 88238
Sands Anderson, PC
1111 East Main Street, Suite 2400
PO Box 1998
Richmond, VA 23218-1998
Phone: (804) 648-1636
Fax: (804) 783-7291
emcnelis@sandsanderson.com
cquirk@sandsanderson.com

---

[4] Notably, this claim for injunctive relief implies an ethical quandary. If Plaintiff truly faces an imminent risk of similar interactions with the emergency department at UVA Medical Center for future suicide attempts, then Plaintiff must be chronically suicidal. And, if Plaintiff is chronically suicidal, then her capacity to request this relief is, at minimum, dubious.

14

*Attorney for Defendants Pamela Sutton-Wallace, Dr. Kathleen Root, Callie Bateman, RN, and Adam Carter, RN*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to the following CM/ECF users:

Jeffrey E. Fogel, Esq.
Attorney at Law
913 E. Jefferson Street
Charlottesville, VA 22902
Jeff.fogel@gmail.com
*Counsel for Plaintiff*

John E. Peterson, Esq.
Andrew G. H. Miller, Esq.
Piedmont Liability Trust
1020 Ednam Center, Suite 100
Charlottesville, VA 22903
Am2wf@virginia.edu
*Counsel for Defendant Dr. Scott A. Syverud*

/s/ Christopher F. Quirk
Edward J. McNelis, III, Esq., VSB 34003
Christopher F. Quirk, Esq., VSB 88238
Sands Anderson, PC
1111 East Main Street, Suite 2400
PO Box 1998
Richmond, VA 23218-1998
Phone: (804) 648-1636
Fax: (804) 783-7291
emcnelis@sandsanderson.com
cquirk@sandsanderson.com
*Counsel for Defendants Pamela Sutton-Wallace, Dr. Kathleen Root, Callie Bateman, RN, and Adam Carter, RN*