CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
10/10/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JANE DOE, *Plaintiff*, v. PAMELA SUTTON-WALLACE, *et al.*, *Defendants*. | CASE NO. 3:18-cv-00041<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

On January 11, 2018, a law enforcement officer found Plaintiff Jane Doe attempting suicide and transported her to the University of Virginia ("UVA") Medical Center emergency department, where she was treated for injuries sustained as a result of her attempted suicide. (Dkt. 1). In Plaintiff's initial complaint, she alleges that Defendants' treatment violated her rights under the Fourth and Fourteenth Amendments of the U.S. Constitution (Counts I–III) and is actionable under state law as gross negligence, assault and battery, and false imprisonment (Count IV). (Dkt. 1 at 4–6). This Court previously granted judgment on the pleadings in favor of Dr. Syverud, who was thereby dismissed as a defendant in this case. (Dkt. 33). The remaining specifically identified defendants—Pamela Sutton-Wallace, Dr. Kathleen Root, Adam Carter, and Callie Bateman—have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 34). Plaintiff has moved to file an amended complaint, seeking to include additional factual allegations and requesting authorization to seek a declaratory judgment, in addition to her other claims for relief. (Dkt. 38). Defendants oppose this motion.

Plaintiff's original complaint fails to establish that she has standing to ask for a court injunction that would require the Medical Center to respect, *inter alia*, her right to refuse medication and treatment. Further, Plaintiff has not shown good cause to permit her an eleventh-

hour amendment—made after a year of litigation and ten months beyond the forty-five-day deadline to amend her complaint—to introduce a request for a declaratory judgment as well as new factual allegations to bolster her claims for relief. Based on the current record and the following analysis, the Court shall deny Plaintiff's Motion to Amend, while Defendants' Motion for Judgment on the Pleadings shall be granted.

## I. BACKGROUND

### A. Alleged Factual Background

Plaintiff alleges that she attempted suicide on January 11, 2018, by running a hose from the exhaust pipe of her car into its passenger compartment. (Dkt. 1, ¶ 9). A law enforcement officer found Plaintiff in her car, and she was taken to UVA Medical Center's emergency department, pursuant to a "paperless" Emergency Custody Order ("ECO"). (*Id.*, ¶¶ 10–11). Plaintiff alleges that "at all relevant times . . . she was competent to make decisions concerning her treatment," (*id.*, ¶ 20), despite being an unwilling patient. (*See id.*, ¶ 22). Plaintiff alleges that the following individuals—acting under color of state law—provided, or assisted in providing, medical care to her while at UVA Medical Center: Defendant Dr. Root,[1] (*id.*, ¶¶ 4, 12), Defendants Nurses Carter and Bateman, (*id.*, ¶¶ 5–6, 16), Jane Roes 1–3 (employees in the emergency department who assisted in treating Plaintiff), (*id.*, ¶¶ 7, 19), and John Does 1–5 (employees in the emergency department who assisted in treating Plaintiff), (*id.*, ¶¶ 8, 17).

Plaintiff alleges that her medical providers extracted blood and urine samples over her objections. (*Id.*, ¶ 12). Upon information and belief, Plaintiff alleges that either Dr. Syverud, who

---

[1] The complete list of defendants is: Pamela Sutton-Wallace, Chief Executive Officer of the University of Virginia ("UVA") Medical Center; Dr. Kathleen Root, a physician employed at UVA Medical Center; Adam Carter, a Registered Nurse at the UVA Medical Center; Callie Bateman, a Registered Nurse at the UVA Medical Center; "Jane Roe" 1–3, unknown employees at the UVA Medical Center; and "John Doe" 1–5, unknown employees at the UVA Medical Center (collectively "Defendants"). The only defendant that did not provide Plaintiff treatment is Pamela Sutton-Wallace.

has been dismissed from this action, or Dr. Root ordered the administration of various medications in order to restrain her, including Zyprexa, a psychoactive drug; Benadryl; and Ativan, a sedative also used to combat anxiety. (*Id.*, ¶ 12). Plaintiff claims that she was not advised of the drugs administered to her, nor told of their likely effects or side effects. (*Id.*, ¶ 15).

In order to extract a blood sample, Plaintiff alleges that John Does 1–5 surrounded Plaintiff, her arm was held against her wishes, and blood was then extracted from her arm. (*Id.*, ¶ 13). At the request of Defendants Nurses Carter and Bateman, Dr. Syverud or Defendant Dr. Root ordered Plaintiff to be placed in physical restraints "for the sole purpose of extracting urine." (*Id.*, ¶ 16). Plaintiff alleges that Defendant Nurse Carter requested—and Dr. Syverud or Defendant Dr. Root entered—an order to catheterize Plaintiff to obtain urine. (*Id.*, ¶ 18). Plaintiff further claims that, thereafter, Jane Roes 1–3 assisted in extracting the urine from Plaintiff via catheter. (*Id.*, ¶ 19).

### B. Procedural Background

On June 12, 2018, Plaintiff filed a complaint against Pamela Sutton-Wallace, Dr. Scott Syverud, Dr. Kathleen Root, Nurse Adam Carter, Nurse Callie Bateman, Jane Roe 1–3, and John Doe 1–5, raising claims under 42 U.S.C. § 1983 and state tort law. Plaintiff claims Defendants violated her "protected liberty interest in refusing unwanted medical treatment," her right to give informed consent to medical treatment, and her right to be free of restraints. (*Id.*, ¶¶ 24, 28, 32). Plaintiff also alleges that Defendants' conduct constituted "gross negligence as well as assault and battery and false imprisonment." (*Id.*, ¶ 36). In her initial complaint, Plaintiff requested relief in the form of compensatory damages as well as an injunction directed at Sutton-Wallace ordering her to (1) "require all physicians, nurses and other medical care providers at the University of Virginia Medical Center to inform Plaintiff of the medications being administered her and to obtain consent for the use of those medications"; (2) "require all physicians, nurses, and other medical

care providers to respect the right of Plaintiff to refuse medication or other treatment"; and (3) "require all physicians, nurses and other medical care providers not to use restraints on Plaintiff for the purpose of administering medications or providing treatment against her wishes." (*Id.*, at 6–7).

Dr. Syverud, one of the thirteen named defendants, filed a Motion for Judgment on the Pleadings. (Dkt. 26). The Court granted the motion, holding that Dr. Syverud was entitled to qualified immunity as to the constitutional claims and that Plaintiff failed to state a claim under Virginia law. (Dkt. 32–33); *Doe v. Sutton-Wallace*, No. 3:18-cv-00041, 2019 WL 2061969 (W.D. Va. May 9, 2019) (slip copy). The remaining defendants then filed their Joint Motion for Judgment on the Pleadings, (Dkt. 34), which argues that (1) Defendants Root, Carter, Bateman, Jane Roe 1–3, and John Doe 1–5 are entitled to qualified immunity as to Plaintiff's constitutional claims, (2) Plaintiff fails to state a claim under Virginia law, and (3) Plaintiff is not entitled to her proposed injunctive relief. (Dkt. 35).

In response to Defendants' motion, Plaintiff simultaneously filed a reply and a motion to amend her complaint, attaching her proposed Amended Complaint. (Dkt. 37–38). In Plaintiff's Amended Complaint, she requests a declaratory judgment stating, "Plaintiff [has] a constitutional right to refuse medications and other treatment under the circumstances of this case"; "Plaintiff has a constitutional right to be informed of the medications being administered to her"; and "that physically restraining Plaintiff to administer drugs against her wishes violates the 14th Amendment to the United States Constitution." (Dkt. 38-2, at 7).

The Amended Complaint also includes the following additional factual allegations: (1) "Jane Doe has been the subject of Emergency Custody Orders (ECO) and/or Temporary Custody Orders (TDO) [*sic*] on dozens of occasions. In each instance she is taken to the University of

Virginia Medical Center Emergency Room, which is the only facility available for that purpose," (*id*., ¶ 23), and (2) "Jane Doe fears that when she is subject to another ECO or TDO she will again be forcibly medicated injected with drugs and forced to provide blood and urine samples," (*id*., ¶ 24). Along with her Motion to Amend, Plaintiff included a declaration stating that she has been subject to "dozens of Emergency and Temporary Custody Orders, and on each occasion [she has] been taken to the UVA Medical Center." (Dkt. 38-1). The declaration also states that she has had approximately seventy-five admissions to the hospital over the last ten years and that UVA is "the only location to take people subject to an Emergency or Temporary Custody Order." (*Id*.).

In Plaintiff's response to Defendants' Motion for Judgment on the Pleadings, Plaintiff "concedes that the Court's ruling with regard to Dr. Syverud would apply to all defendants save Pamela Sutton-Wallace," who is sued in her official capacity for injunctive relief. (Dkt. 37 at 1–2). Plaintiff argues that she has stated plausible claims for injunctive and declaratory[2] relief, and therefore, those claims should survive Defendants' Motion for Judgment on the Pleadings. This opinion will first analyze Plaintiff's Motion to Amend and then turn to the Defendants' Motion for Judgment on the Pleadings.

## II. ANALYSIS

### A. Motion to Amend

#### 1. Standard of Review

Fed. R. Civ. P. 15(a)(2) states, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so

---

[2] Defendants' 12(c) motion is based on Plaintiff's initial complaint, which does not request declaratory judgment. Therefore, if the Court does not grant leave to amend, Plaintiff's only claims against Defendant Sutton-Wallace would be those for injunctive relief.

requires." The Supreme Court has identified several justifications to deny a motion to amend pursuant to Rule 15; these include undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *Forman v. Davis*, 371 U.S. 178, 182 (1962). Additionally, once a scheduling order is entered pursuant to Rule 16(b)(1), the movant also must satisfy the good cause standard under Rule 16(b)(4). That standard "'focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party.'" *Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778, 784 (E.D.N.C. 2011) (quoting *Montgomery v. Anne Arundel Cnty., Md.*, 182 F. App'x 156, 162 (4th Cir. 2006)). "In considering an untimely amendment to the pleadings, the court looks to whether the evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline has passed." *Id*. (internal quotations omitted).

2. Application of Rule 16(b)(4)'s "Good Cause" Standard

In this case, the Court entered a pre-trial order on July 17, 2018, stating "[t]he court shall consider a party's motion to amend pleadings in accordance with Rule 15 of the Federal Rules of Civil Procedure. Except for good cause shown, any such motion must be filed no later than 45 days from the date of this order." (Dkt. 12 at 6). Plaintiff did not file her Motion to Amend until June 6, 2019—nearly one year after the pre-trial order was entered and well after the forty-five-day deadline. (Dkt. 38). During this period, the Court considered and resolved the Rule 12(c) motion filed by then-Defendant Dr. Syverud, (Dkt. 26, 32, 33), and the remaining Defendants filed their Motion for Judgment on the Pleadings currently before the Court and addressed by this memorandum opinion, (Dkt. 34). Thus, "[t]he standard applicable here is not the 'freely given' Rule 15(a) standard but the more stringent 'good cause' standard under Fed. R. Civ. P. 16(b)." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004); *accord Nourison Rug*

*Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (holding that "after the deadlines provided by scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."). Defendants argue that Plaintiff fails to show good cause pursuant to Rule 16, and even if she had, an amendment would be futile and thus should be denied under Rule 15. Without addressing the issue of futility, this Court agrees with Defendants that Plaintiff has not demonstrated good cause for her delay.

"Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment . . . Prejudice to the opposing party remains relevant but is not the dominant criterion." *O'Connell*, 357 F.3d at 154. Here, the Plaintiff's Amended Complaint adds two factual allegations: one regarding previous experiences Plaintiff has had at UVA Medical Center and the other noting her fear of similar occurrences in the future. Plaintiff did not file a brief with her motion, but she addresses the Motion to Amend in her reply to Defendants' 12(c) motion. (Dkt. 37). In that brief, she states only that she "simply seeks to (1) add an additional fact that is not disputed and (2) request declaratory judgments which parallel her requests for injunctive relief." (Dkt. 37 at 5). She argues that "Defendants will not be prejudiced by this amended complaint because it simply recites what the Defendants already know." (*Id.*) The additional allegations Plaintiff attempts to introduce, she argues, are "clearly relevant to the motion filed by Defendants and [support] the reality that [Plaintiff] is likely to be readmitted to UVA where she will receive the same forced medication and examination as is the gravamen of the Complaint." (*Id.*).

The moving party bears the burden of demonstrating whether good cause exists under Rule 16(b). *See, e.g.*, *United States v. Hartford Accident & Indemnity Co.*, JKB-14-2148, 2016 WL 386218 (D. Md. Feb. 2, 2016). Plaintiff does not provide any explanation as to why her claim for declaratory relief and these additional facts—which were clearly known to her at the time of

filing—were not included in her initial complaint. Indeed, she does not address diligence in any way. The "good cause" standard emphasizes *diligence*—prejudice is "not the dominant criterion" at this stage. *O'Connell*, 357 F.3d at 154; *see also Nourison Rug Corp.*, 535 F.3d at 298 (upholding a district court's denial of a motion to amend when counsel discovered "a defense available to [the defendant] that he had not raised in his Answer" and "his Reply Memorandum did not add any detail to his reasons."). Because Plaintiff has not demonstrated good cause as to why she failed to amend her complaint within the deadline, the Court denies her motion on this ground. *See Stanley v. Huntington Nat. Bank*, 492 Fed. App'x 456, 462 (4th Cir. 2012) (affirming the district court's denial of plaintiff's motion to amend her complaint where the motion to amend "did not address the diligence required to show good cause" and plaintiff had offered no reasons as to why her proposed additional claim was not filed through a timely amendment). Consequently, the Court need not address whether the amendment would be futile under Rule 15.

Consequently, when evaluating Defendants' Motion for Judgment on the Pleadings, the Court will consider only the well-pleaded allegations in Plaintiff's original complaint. The Court will not consider or address the proposed factual allegations that Plaintiff included in the proposed amendments to her Complaint.[3]

**B. Motion for Judgment on the Pleadings**

Plaintiff "concedes that the Court's ruling with regard to Dr. Syverud would apply to all defendants save Pamela Sutton-Wallace." (Dkt. 37 at 1–2). Therefore, for the reasons set forth in the Court's memorandum opinion, (Dkt. 32), the Court grants the Defendants' motion, (Dkt. 34) as to Nurses Carter and Bateman, Dr. Root, Jane Roes 1–3, and John Does 1–5. In that opinion,

---

[3] These include Plaintiff's proposed allegations indicating that she had been subject to treatment at UVA Medical Center pursuant to ECOs "dozens" of times, that UVA Medical Center is the only facility "available for this purpose," and that Plaintiff fears that she will be subject to the same treatment alleged in this complaint on future occasions.

the Court reasoned that Dr. Syverud's "belief that he had a right to perform the procedures necessary to treat Plaintiff was reasonable" and "insofar as precedent should have informed [his] actions, it supports his belief that he had a duty to prevent Plaintiff's suicide." (Dkt. 32); *Doe v. Sutton-Wallace,* No. 3:18-cv-00041, 2019 WL 2061969 at *5 (W.D. Va. May 9, 2019) (slip copy). There is no reason to believe that this rationale would not apply to the other treatment providers involved in the events alleged in Plaintiff's initial complaint. *See JH v. Henrico Cty. Sch. Bd.*, 395 F.3d 185, 197 n.9 (4th Cir. 2005) (stating that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). But because "a finding of qualified immunity extends only to [Defendants'] liability for damages," the Court must examine Plaintiff's remaining claim for injunctive relief. *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015).

1. Standard of Review

A motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) is made after pleadings are closed, "but early enough not to delay trial." The standard for Rule 12(c) motions is the same as for motions made pursuant to Rule 12(b)(6). *Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). Accordingly, "we assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [Plaintiff's] favor." *Id*. However, the complaint must state a claim that is plausible on its face, and the Court will not accord the presumption of truth to legal conclusions couched as factual allegations. *McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 582 (4th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). *See also Papasan v. Allain*, 478 U.S. 265, 286 (1986); *SD3, LLC v. Black & Decker, Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

## 2. Standing to Seek Injunctive Relief

In order to invoke this Court's jurisdiction under Article III of the U.S. Constitution, Plaintiff must allege an actual case or controversy. In seeking a permanent injunction, Plaintiff seeks prospective relief, and she must therefore make "a showing of [a] real or immediate threat that [she] will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see Raub*, 785 F.3d at 885–86 (quoting *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995)) ("Where a § 1983 plaintiff also seeks injunctive relief, it will not be granted absent the plaintiff's showing that there is a 'real or immediate threat that [he] will be wronged again . . . in a similar way.'") (alterations in original). Even where a plaintiff could establish that her constitutional rights were violated, "past wrongs do not in themselves amount to that real and immediate threat of injury." *Raub*, 785 F.3d at 886 (internal quotations omitted). As this matter is currently before the Court on Defendant's Motion for Judgment on the Pleadings, this Court will assume the facts alleged in Plaintiff's initial complaint, drawing all reasonable inferences in her favor. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (finding that standing must be supported "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation").

In this case, Plaintiff seeks an injunction directed at Defendant Pamela Sutton-Wallace that would require: (1) all medical care providers at the UVA Medical Center "to inform Plaintiff of the medications being administered her and to obtain consent for the use of those medications"; (2) all medical care providers "to respect the right of Plaintiff to refuse medication or other treatment"; and (3) medical care providers "not to use restraints on Plaintiff for the purpose of administering medications or providing treatment against her wishes." (Dkt. 1 at 6–7). Defendants

argue that these "proposed injunctions are based on a speculative occurrence of future violations that do not merit" injunctive relief. (Dkt. 44).

Here, Plaintiff's claim for injunctive relief is based on the actions of the UVA Medical Center while Plaintiff was subject to an ECO. Because Plaintiff's custody "is by nature temporary," *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 249 (4th Cir. 2005) (internal citations omitted), the Court must look to "whether there is a reasonable expectation that [the plaintiff] will be subject to the same action in the future," *id*. Plaintiff was subject to Defendants' actions because she was a suicidal patient admitted to the UVA Medical Center Emergency Department pursuant to an ECO. In order to determine that there is a reasonable expectation Plaintiff will again be subject to Defendants' allegedly unconstitutional treatment, the Court must find that the Complaint includes factual allegations sufficient to draw a reasonable expectation that 1) Plaintiff will again be treated at UVA pursuant to an ECO, and 2) she will be subjected, once again, to the actions and treatment that formed the basis for her initial complaint.

Plaintiff's operative initial complaint failed to provide factual allegations that would permit the Court to draw a reasonable expectation that she will be subjected to UVA's ECO protocol in the future. Her initial complaint cites only the single instance forming the basis of her claim. (Dkt. 1 ¶¶ 10–11). Even if there were factual allegations sufficient for the Court to draw a reasonable expectation that Plaintiff would go on to be subject to another ECO in the future, there is nothing in the initial complaint that allows the Court to reasonably expect that it will be UVA that provides her any treatment.[4] As articulated in the above analysis, the Court did not find that Plaintiff demonstrated good cause for her failure to timely amend her initial complaint. Accordingly, the

---

[4] While, at this stage, the Court draws all reasonable inferences in Plaintiff's favor, the Court requires at least some factual allegations from which to draw those inferences. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The initial complaint, however, does not contain any information relating to whether Plaintiff continues to reside in the same area or whether she has been treated at any other hospitals.

Court is only able to conclude that Plaintiff's alleged risk of future injury at UVA is "merely speculative, such that [s]he cannot make out th[e] prerequisite of equitable relief." *Raub*, 785 F.3d at 886; *see also Jones v. White*, No. 5:17-cv-100, 2018 WL 2708750, at *2 (N.D. W.Va. June 5, 2018) (holding that, even if the defendants had violated the plaintiff's constitutional rights, "the past violation would not amount to a real and immediate threat of future constitutional violations"); *Beauchamp v. Maryland*, No. TDC-14-2667, 2015 WL 4389789 at *10, n.5 (D. Md. July 13, 2015) ("Where qualified immunity is asserted, federal injunctive relief is an extreme remedy only awarded under Section 1983 if the plaintiff shows that there is a real or immediate threat that he will be wronged again in a similar way.") (internal quotations omitted).

Defendants further argue that this Court should refuse to assume that Plaintiff will attempt suicide in the future—regardless of the facts alleged in Plaintiff's Complaint—as suicide and the attempt thereof remain a common law crime in Virginia. *Brown v. Harris*, 240 F.3d 383, 386 (4th Cir. 2001) (quoting *Wackwitz v. Roy*, 244 Va. 60 (1992)). They note that this Court "traditionally refuses to assume that [plaintiffs] engage in future illegal activity" when "evaluating a plaintiff's risk of future harm." (Dkt. 40, at 3).

Courts "assume that [plaintiffs] will conduct their activities within the law." *See Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 249 (4th Cir. 2005) (quoting *Spencer v. Kemna*, 523 U.S. 1, 15 (1998)); *see also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("[W]e are nonetheless unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners"). Plaintiff has not addressed this principle—much less demonstrated

why it should not apply in this case.  In any event, regardless of whether the Court were to apply this assumption, the Court is unable to find factual allegations in the original Complaint to suggest that there is a reasonable expectation that Plaintiff will be subject to the Defendants' actions again.

### III. Conclusion

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings will be granted.  As Plaintiff has conceded that "the Court's ruling [on qualified immunity] with regard to Dr. Syverud would apply to all defendants save Pamela Sutton-Wallace," (Dkt. 37 at 1–2), Plaintiff's claims as to Defendants Callie Bateman, Adam Carter, Kathleen Root, Jane Roes 1–3, and John Does 1–5 will be dismissed without prejudice.  Plaintiff's claims against Defendant Pamela Sutton-Wallace will also be dismissed without prejudice, based on Plaintiff's failure to establish Article III standing for her injunctive relief claim.  *See Santana v. Take-Two Interactive Software, Inc.*, 717 Fed. App'x 12, 17 (2d Cir. 2017) ("A complaint dismissed for lack of Article III standing should be without prejudice because the court is without subject matter jurisdiction."); *Hernandez v. Conriv Realty Associates*, 182 F.3d 121, 123 (2d. Cir. 1999) (reasoning that dismissals for lack of subject matter jurisdiction should be dismissed without prejudice because Article III's limits on federal jurisdiction are not designed to prevent federal courts from interfering with state court jurisdiction); *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987) (citing *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522 (1931)) An appropriate order will issue.

Entered this  10th  day of October, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE